**THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

|  |  |
|---|---|
| Evelyn Arthur, *et al.,* | |
| *Plaintiffs,* | |
| v. | Case No. 1:18-cv-2037 (DLF) |
| District of Columbia Housing Authority, *et al.,* | |
| *Defendants.* | |

**DISTRICT OF COLUMBIA HOUSING AUTHORITY AND CIH PROPERTIES, INC.'S**
**MOTION TO DISMISS THE AMENDED COMPLAINT**
**AND TO STRIKE PUNITIVE DAMAGES**

Plaintiffs, Evelyn Arthur ("Ms. Arthur") and her son, Robert Arthur, Sr. ("Mr. Arthur") filed an Amended Complaint against ten public and individual defendants, including the District of Columbia Housing Authority ("DCHA") and CIH Properties, Inc. ("CIH"). The Amended Complaint asserts the following twelve claims against DCHA and CIH:

1. Title II of the Americans with Disabilities Act ("ADA") (Claim 1);

2. Title II of the ADA (Claim 2);

3. Tile III of the ADA (Claim 3);

4. Section 503 of the ADA (Claim 4);

5. Section 504 of the Rehabilitation Act (Claims 6 and 8);

6. The District of Columbia Human Rights Act (Claim 11);

7. Retaliation under the District of Columbia Code § 42-3505.02 (Claim 10);

8. District of Columbia common law – implied warranty of habitability and covenant of quiet enjoyment (Claim 12);

9.   Violation of Procedural Rights under 42 U.S.C. § 1983 (Claim 15);

10.  District of Columbia common law breach of lease (Claim 16); and

11.  Violation of the Fair Housing Act (Claim 18).

Claims 1-3, 6, 18 (failure to accommodate disability), 12 (implied warranty of habitability and covenant of quiet enjoyment) and 16 (breach of lease) are asserted by Ms. Arthur alone.  Claim 15 (violation of procedural rights under 42 U.S.C. § 1983) is asserted by Mr. Arthur alone. Claims 4, 8 (retaliation under the ADA and Rehabilitation Act) and 11 (DCRA retaliation) are brought by both Ms. Arthur and Mr. Arthur jointly.

DCHA and CIH respectfully submit as follows:

1.   Claims 1-4, 6, 8 and 11 are time barred by DCHRA's one-year statute of limitations and should be dismissed with prejudice.

2.   Claim 2 fails because CIH is not a public entity; Claim 3 also fails because Claridge Towers, a residential building, is not a place of public accommodation.

3.   Claims 10 and 12 should be dismissed with prejudice for failure to state a cause of action. Claim 10 fails as a matter of law because District of Columbia Retaliatory Action ("DCRA"), D.C. Code § 42-3505.02, does not provide a private cause of action.  Claim 12 fails because breach of the warranty of habitability involves violations of the housing code and breach of the covenant of quite enjoyment involves only those breaches interfering with the tenant's lease.

4.   Claim 15 fails because Mr. Arthur was not an "applicant" seeking admission to public housing.

5.   Claim 16 should be dismissed because Ms. Arthur failed to sufficiently allege a claim for breach of lease.

6. Claim 18 fails, in part, because Ms. Arthur was not denied a reasonable accommodation.

In essence, although the 41 page complaint contains numerous counts and factual allegations spanning more than two years, when analyzed according to the law, only the time period from June 17, 2017 to July 20, 2017 alleging the two purported requests for accommodations is at issue.  Should any claims under the Rehabilitation Act or ADA survive, the Court should strike Plaintiffs' prayer for relief seeking punitive damages for Claims 1-4, 6 and 8 because the prayer is improperly pleaded relief.  In support of this Motion, DCHA and CIH submit the attached Memorandum of Points and Authorities.

Dated: June 14, 2019                          Respectfully submitted,

                                       _____/s/_____
                                       Frederick A. Douglas, DC Bar 197897
                                       Tiffany L. Greaves, DC Bar 1048912
                                       Tram T. Pham, DC Bar No. 1034963
                                       **DOUGLAS & BOYKIN PLLC**
                                       1850 M Street NW, Ste. 640
                                       Washington, DC 20036
                                       202.776.0370
                                       202.776.0975 (fax)
                                       fadouglas@douglasboykin.com
                                       tgreaves@douglasboykin.com
                                       tpham@douglasboykin.com
                                       *Attorneys for District of Columbia Housing Authority and CIH Properties, Inc.*

## <u>Certificate of Service</u>

I, Tiffany L. Greaves, hereby certify that on June 14, 2019 a true and correct copy of the foregoing Motion and accompanying Memorandum of Points and Authorities was served via the Court's electronic filing system to all counsel of record.

_____/s/_____

Tiffany L. Greaves

**THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

Evelyn Arthur, *et al.,*

       *Plaintiffs,*

   v.

District of Columbia Housing Authority, *et al.,*

       *Defendants.*

Case No. 1:18-cv-2037 (DLF)

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DISTRICT OF COLUMBIA HOUSING AUTHORITYAND CIH PROPERTIES, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT AND TO STRIKE PUNITIVE DAMAGES

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.     INTRODUCTION ................................................................................................ 1

II.    SUMMARY OF FACTUAL ALLEGATIONS ..................................................... 1

III.   STANDARD OF REVIEW ................................................................................... 4

   A.   Motion to Dismiss ............................................................................................ 4

   B.   Motion to Strike ............................................................................................... 5

IV.    ARGUMENT ........................................................................................................ 5

   A.   Motion to Dismiss ............................................................................................ 5

   I.    Claims arising under Title II, Title III and Title IV of the ADA, the Rehabilitation Act, and the DCHRA are Time Barred by the DCHRA's One-Year Statute of Limitations . ............................................................................................. 5

         a.   *Application of the one-year statute of limitations.* ................................. 6

         b.   *One-year statute of limitations as applied to this case.* ....................... 10

         c.   *Course of conduct cannot save Plaintiffs' claims.* .............................. 11

   II.   Plaintiff's remaining claims under Title II, Title III and Title IV of the ADA, the Rehabilitation Act, and the DCHRA must be dismissed.. .......................... 16

   III.  Alternatively, Claims 2 and 3 fail because Tile II and Title III of the ADA do not apply to CIH or Claridge Towers..................................................................... 16

         a.   *Claim 2 fails to state a claim because CIH is not a public entity.* ........ 16

         b.   *Claim 3 fails to state a claim because Claridge Towers in ot a public accommodation* ................................................................................... 18

   IV.   Claim 10 should be dismissed because District of Columbia Retaliatory Action ("DCRA"), D.C. Code § 42-3505.02, does not provide a private cause of action or monetary damages. .............................................................................................. 20

   V.    Claim 12 should be dismissed because Ms. Arthur failed to state a claim for breach of the common law implied warranty of habitability and covenant of quiet enjoyment……………………………………………………………………….23

         a.   *The claim for breach of the common law implied warranty of habitability fails because there is no allegation that DCHA violated any applicable housing codes* ...................................................................................................... 23

         b.   *The claim for breach of the common law implied covenant of quiet enjoyment fails because there has been no disturbance in Ms. Arthur's possessory interest* ........ 24

VI.    Mr. Arthur fails to state a claim pursuant to Section 1983 (Claim 15)for lack of an enforceable right ........................................................................................... 25

VII.   Plaintiff's Breach of Lease claim (Claim 16) should be dismissed with prejudice for failure to state a claim for relief ...................................................................... 28

VIII.  Plaintiff's Fair Housing Act claim (Claim 18) should be dismissed for failure to state a cause of action ........................................................................................ 29

     a.  *The doctrine of "continuing violations" is inapplicable to reasonable accommodation claims under the FHA* ............................................................ 29

     b.  *DCHA provided Ms. Arthur with what she requested: a live-in aide and additonal hardware* .......................................................................................... 31

        i.  *It is undisputed that DCHA provided Ms. Arthur's requests for reasonable accommodations* ..................................................................... 32

        ii.  *Approval of Mr. Arthur as a live-in aide cannot be considered a reasonable accommodation* .................................................................... 33

        iii.  *DCHA could not have failed, no less denied, a reasonable accommodation where none was ever requested* ................................................. 34

  B.  Motion to Strike .................................................................................................. 34

  I.    Plaintiffs may not seek punitive damages for alleged violations of the Americans with Disabilities Act and the Rehabilitation Act  . .............................................. 34

  II.   Plaintiffs may not seek punitive damages for the alleged breach of the common law implied warranty of habitability and covenant of quiet enjoyment ........................... 36

V.    CONCLUSION ............................................................................................... 37

# TABLE OF AUTHORITES

## Cases

*AMTRAK v. Morgan*, 536 U.S. 101, 105 (2002) ............................................................ 11, 13, 32

*Arceneaux v. Marin Hous. Auth.*, 2015 U.S. Dist. LEXIS 67930, * 20-21 (N.D. Cal., May 26, 2015).................................................................................................................................. 19

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ....................................................................... 4

*Bahiman v. 3407-9-11 29th St., N.W., Inc.*, 1990 U.S. Dist. LEXIS 9066, *4-5 (D.D.C. July 20, 1990)................................................................................................................................. 30

*Barnes v. Gorman*, 536 U.S. 181 (2002) ............................................................................ 37

*Barrett v. Covington & Burling LLP*, 979 A.2d 1239, 1248, 1249 (D.C. 2009) .................. 12, 13

*Barry Farm Tenants & Allies Ass'n v. D.C. Hous. Auth.*, 311 F. Supp. 3d 57, 69 (D.D.C. 2018) 26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) ............................................................... 4

*Beltway Management Co. v. Lexington-Landmark Ins. Co.*, 746 F. Supp. 1145, 1150 (D.D.C. 1990)................................................................................................................................. 23

*Bernstein v. Fernandez*, 649 A.2d 1064 (D.C. 1991) ........................................................ 37

*Bhatia v. 3M Co.*, 323 F. Supp. 3d 1082 (D. Minn. 2018) ................................................. 5

*Bragdon v. Abbott*, 524, U.S. 624, 631 (1998) ................................................................. 32

*Butera v. District of Columbia*, 235 F.3d 637 (D.C. Cir. 2001) ......................................... 37

*Chenari v. George Wash. Univ.*, 172 F. Supp. 3d 38, 54 (D.D.C. 2016) ............................ 16

*Congress v. District of Columbia*, 324 F. Supp. 3d 164, 171 (D.D.C. 2018) ..................... 7

*Cort v. Ash*, 422 U.S. 66 (1975)........................................................................................ 21

*Di Lella v. Univ. of the Dist. of Columbia David A. Clarke Sch. of Law*, 570 F. Supp. 2d 1, 7 (D.D.C. 2008)................................................................................................................... 9

*Edison v. Douberly*, 604 F.3d 1307, 1308, 1310 (11th Cir. 2010) ................................... 16, 17

*Edwards v. United States EPA*, 456 F. Supp. 2d 72, 103 (D.D.C. 2006) .......................... 16

*Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999)................................... 15, 32, 35

*George Washington University v. Weintraub*, 458 A.2d 43, 47 (D.C. 1983) ................... 23

*Giebeler v. M&B Assocs.* 343 F. 3d 1143, 1148-1149 (9th Cir. 2003)............................... 31

*Green v. City of New York*, 465 F.3d 65, 79 (2d Cir. 2006) .............................................. 17

*Gregorio v. Hoover*, 238 F. Supp. 3d 37 (D.D.C. 2017) ................................................... 29

*Ham v. Ayers*, 229 F. Supp. 3d 32, 38 (D.D.C. 2017) ...................................................... 15

*Hamilton v. Dist. of Columbia*, 720 F. Supp. 2d 102, 110 (D.D.C. 2010)......................... 26

*Henneghan v. District of Columbia*, 2012 U.S. Dist. LEXIS 36122, *6 n.3 (D.D.C. Mar. 16, 2012)................................................................................................................................. 12

*Hooper v. United States HUD*, 2017 U.S. Dist. LEXIS 84164 *9 (D. Or. May 31, 2017) .......... 19

*Hyde v. Brandler*, 118 A.2d 398 (D.C. 1955)..................................................................... 24

*Jaiyeola v. District of Columbia*, 40 A.3d 356, 368 (D.C. 2012)...................................... 6

*Javins v. First Nat'l Realty Corp.*, 428 F.2d 1071, 1072 (D.C. Cir. 1970) ......................... 23

*Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, 533 (1989) .............. 22

*\*Koch v. White*, 134 F. Supp. 3d 158, 160, 166 (D.D.C. 2015) ....................................... 12, 14, 31

*Lancaster v. Phillips Invs., LLC*, 482 F. Supp. 2d 1362 (M.D. Ala. 2007) ................................. 19

*Lee v. Corr. Corp. of Am.*, 61 F. Supp. 3d 139, 143 (D.D.C. 2014) ............................................ 17

*Long v. Howard Univ.*, 439 F. Supp. 2d 68, 74 (D.D.C. 2006) ...................................................... 9

*Long v. Howard Univ.*, 512 F. Supp. 2d 1, 16 (D.D.C. 2007) ...................................................... 12

*Mahdi Sufi El v. People's Emergency Ctr.*, 315 F. Supp. 3d 837, 844 (E.D. Pa. 2018).............. 19

*McColm v. San Francisco Hous. Auth.*, 2007 U.S. Dist. LEXIS 41631 * 32-33 (N.D. Ca. May 29, 2007).................................................................................................................................. 19

*McFadden v. Wash. Metro. Area Transit Auth.*, 204 F. Supp. 3d 134, 142 (D.D.C. 2016) .......... 7

*N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995)..................................................................... 6

*Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400 (1968) ........................................................ 20

*\*Parham v. CIH Props.*, 2015 U.S. Dist. LEXIS 119816, *3-4, 10, 12 (D.D.C. Sept. 6, 2015). 11, 19, 32,

...................................................................................................................................................
.......... 33

*Pierce v. District of Columbia*, 128 F. Supp. 3d 250 (D.D.C. 2015)........................................ 8, 36

*Pucci v. Carnival Corp.*, 160 F. Supp. 3d 1329, 1331 (S.D. Fla. 2016) ........................................ 5

*\*Simba v. Fenty*, 754 F. Supp. 2d 19 (D.D.C. 2010) ..................................................................... 5

*\*Sobelsohn v. Am. Rental Mgmt. Co.*, 926 A.2d 713, 715 (D.C. 2007) ....................................... 24

*Taylor v. Washington Metro. Area Transit Auth.*, 109 F. Supp. 2d 11, 18 (D.D.C. 2000)........... 17

*Torrence v. Advanced Home Care, Inc.*, No. 2:14-14348, 2009 U.S. Dist. LEXIS 42954, *14 (N.D. Ill. May 21, 2009)........................................................................................................... 20

*\*Twyman v. Johnson*, 655 A.2d 850 (D.C. 1995)................................................................... 21, 22

*\*United States v. California Mobile Home Park Management Co.*, 29 F.3d 1413, 1417 (9th Cir. 1994)........................................................................................................................................ 31

*United States v. District of Columbia*, 538 F. Supp. 2d 211, 217-18 (D.D.C. 2008) ................... 32

*Von Drasek v. Burwell*, 121 F. Supp. 3d 143, 156 n.5 (D.D.C. 2015).......................................... 7

*Walker v. District of Columbia*, 279 F. Supp. 3d 246, 271 (D.D.C. 2017)............................. 9, 31

*\*Whole Foods Mkt. Grp. v. Wical L.P.*, 288 F. Supp. 3d 176 (D.D.C. 2018) ....................... 24, 25

*Williams v. New York City Hous. Auth.* (2012, ED NY) 879 F Supp. 2d 328 .............................. 34

*Zimbelman v. Southern Nev. Reg'l Hous. Auth.*, 111 F. Supp. 3d 1148, 1155 (D. Nev. 2015).... 34

## Statutes

28 U.S.C. § 1292 (b) ..................................................................................................................... 5

29 U.S.C. § 794........................................................................................................... 1, 8, 35

*\*42 U.S.C. §§ 12131 et seq.*.............................................................................................................. 1

42 U.S.C. § 12132 ...................................................................................................................... 8, 16

42 U.S.C. § 12133 ........................................................................................ 8

*42 U.S.C. § 12181 ................................................................................. 1, 18

42 U.S.C. § 12182 ........................................................................................ 8

42 U.S.C. § 12188(a)(1) .............................................................................. 20

42 U.S.C. § 12203(c) .................................................................................. 36

42 U.S.C. § 13663(d) ....................................................................... 25, 27, 28

42 U.S.C. § 1983 .............................................................................. 2, 1, 25, 26

42 U.S.C. § 2000a-3(a) ............................................................................... 20

42 U.S.C. § 3601 *et seq* ............................................................................. 30

42 U.S.C. 12203(a)-(b) ................................................................................. 8

42 U.S.C. § 3604(f)(2)(A) ........................................................................... 32

D.C. Code § 2-1402.21(d)(3)(B) .................................................................. 7

D.C. Code § 2-1402.31(a)(1) ......................................................................... 7

D.C. Code § 2-1402.61(a)-(c) ....................................................................... 8

D.C. Code § 2-1403.16 ................................................................................. 6

D.C. Code § 42-3505.02 ................................................................ 2, 1, 20, 21

D.C. Code § 42-3509.01 .............................................................................. 21

D.C. Code § 45-2591 ................................................................................... 21

## Other Authorities

144 Cong. Rec. S11841 (daily ed. Oct. 8, 1998) ....................................... 34

District of Columbia Housing Authority, *Claridge Towers*, *available at*
      http://www.dchousing.org/property.aspx?id=6F (last visited Jan. 9, 2019). ........................... 18

H.R. Rep. No. 101-485(II), at 100 (1990) ................................................. 20

## Regulations

14 DCMR § 5804.1(b) ................................................................................ 34

14 DCMR § 5999 ........................................................................................ 27

14 DCMR § 6109.6(c) ................................................................................. 27

14 DCMR § 6121.3 ............................................................................... 27, 33

14 DCMR § 6121.5 ...................................................................................... 28

24 C.F.R. § 5.403 ........................................................................................ 27

24 C.F.R. § 960.102(a)(2) ........................................................................... 27

24 C.F.R. § 960.204(a)(4) ........................................................................... 34

*28 C.F.R. § 36.104. .................................................................................. 19

*42 U.S.C. § 13663 ............................................................................... 27, 34

## I.  INTRODUCTION

On May 3, 2019, Plaintiffs, Evelyn Arthur ("Ms. Arthur") and her son, Robert Arthur, Sr. ("Mr. Arthur") filed an Amended Complaint against ten public and individual defendants, including the District of Columbia Housing Authority ("DCHA") and CIH Properties, Inc. ("CIH").  They purport to allege claims against DCHA and CIH under Titles II and III, respectively, of the Americans with Disabilities Act ("ADA")[1] (Claims 1, 2 and 3); Section 504 of the Rehabilitation Act[2] (Claims 6 and 8); Section 503 of the ADA[3] (Claim 4); the District of Columbia Human Rights Act (Claim 11); retaliation under the District of Columbia Code § 42-3505.02 (Count 10); District of Columbia common law (Claims 11 and 12); violation of procedural rights under 42 U.S.C. § 1983 (Claim 15); and violation of the Fair Housing Act (Claim 18).  Claims 1-4, 6, 18 (failure to accommodate disability), 12 (implied warranty of habitability and covenant of quiet enjoyment) and 16 (breach of lease) are asserted by Ms. Arthur alone.  Claim 15 (violation of procedural rights under 42 U.S.C. § 1983) is asserted by Mr. Arthur alone. Claims 4, 8 (retaliation under the ADA and Rehabilitation Act) and 11 (DCRA retaliation) are brought by both Ms. Arthur and Mr. Arthur jointly.

## II.  SUMMARY OF FACTUAL ALLEGATIONS

The District of Columbia Housing Authority ("DCHA") is an independent government agency whose stated mission is to provide quality, affordable housing to extremely low through moderate-income families, to foster sustainable communities, and cultivate D.C. residents to improve their lives.  DCHA's public housing portfolio consists of more than 8,000 apartment or

---

[1]     Titles II and II of the Americans with Disabilities Act are found under 42 U.S.C. §§ 12131 *et seq.* and 42 U.S.C. §§ 12181 *et seq.*, respectively.

[2]     Section 504 of the Rehabilitation Act is found under 29 U.S.C. § 794.

[3]     Section 503 of the ADA is found under 42 U.S.C. § 12203.

townhome units on approximately 56 public housing properties in the District of Columbia.  As

one of the District's largest landlords, DCHA serves over 20,000 tenants, including over 6,000

seniors.  Claridge Towers, the  DCHA property at which Ms. Arthur resides, provides studio and

one-bedroom apartments for indigent senior and disabled District of Columbia residents.

Amended Complaint ("Am. Compl.") at ¶ 9.  DCHA contracts with CIH Properties, Inc. ("CIH")

to manage and provide security to Claridge Towers.  CIH subcontracts the security function with

Butler Security.  *Id*. at ¶ 12.

 As alleged in the Complaint, Claridge Towers has a visitor policy, which Plaintiffs refer

to as a "Phone Call Rule," requiring all visitors to that senior housing facility to present

identification to the security guard on duty.  *Id*. at ¶ 17.  The visitor and/or guard logs the

visitor's name into a visitor book, and, if the resident is not present with the visitor, the security

guard calls the resident's unit to confirm that the resident is at home and wishes to receive the

guest.  *Id*.  If the resident does not answer the phone, the visitor is not permitted entry and must

leave the property.  *Id*.

 In 2014, DCHA accepted Evelyn Arthur into the public housing program and provided

her with a one-bedroom apartment at Claridge Towers.  Ms. Arthur is 78 years-old and deaf.  *Id*.

at ¶¶ 9 and 18.  She alleges that her son Robert Arthur, Sr., is her primary caregiver, though she

also admits that DCHA has approved her request for a live-in aide.  *Id*. at ¶¶ 18, 42.  Plaintiff

alleges that "because [she] cannot hear a telephone ring," between 2014 and January 2017,

Claridge Towers' management staff permitted Robert Arthur, Sr., her son, to enter the building

after presenting identification and signing in.  *Id*. at ¶ 18.  Additionally, Plaintiffs allege that

Claridge Towers permitted Mr. Arthur to serve as Ms. Arthur's telephone contact to confirm

whether a visitor could enter the building and go to Ms. Arthur's apartment.  *Id*.

According to the Amended Complaint, in January 2017, Mr. Arthur had a Video Relay System ("VRS") installed in Ms. Arthur's apartment through which she can communicate with hearing people in real time by connecting both parties to a sign language interpreter.  *Id*. at ¶ 19. Accordingly, on January 18, 2017, CIH advised Ms. Arthur that henceforth she would be responsible for telephonic confirmation of all visitors including Mr. Arthur and sent Ms. Arthur a letter advising that her son would be required to follow the visitor policy before being admitted. *Id*. ¶ 21.  Nonetheless, as alleged in the Complaint, instead of abiding by the "Phone Call Rule," Mr. Arthur intentionally circumvented it and made numerous unauthorized entries to Claridge Towers.

Plaintiffs further allege that on June 17, 2017, Mr. Arthur attempted to enter the building by way of the guard station; however, Ms. Arthur did not answer the telephone and, per the "Phone Call Rule," the guard denied him entry.  *Id*. at ¶¶ 23-26.  Mr. Arthur admits that despite being denied access to the building and warned of the potential issuance of a Bar Notice, he nevertheless entered.  *Id*. at 26.  As a result, that day, Officer Traynham issued a Bar Notice barring Mr. Arthur from the premises for two months.  *Id*. at ¶ 27.  Mr. Arthur alleges that he requested reconsideration of the Bar Notice and that his requests were denied.  *Id*. at ¶ 44.  Mr. Arthur also admits that he entered Claridge Towers while the two-month Bar Notice was in effect.  *Id*. at ¶ 47-50.  Consequently, he was issued a second Bar Notice for an additional six-month period.  *Id*. at ¶ 52.

On June 20 and July 18, 2017, Ms. Arthur submitted formal requests for permission to have a live-in aide and additional hearing-impaired hardware.  *Id*. at ¶ 42.  On July 20, 2017, DCHA approved Ms. Arthur's requests for a live-in aide, additional hearing-impaired hardware, and a lifting of the barring notices should Mr. Arthur qualify as her  live-in aide.  *Id*. at ¶ 42.

3

Although Mr. Arthur applied to be Ms. Arthur's live-in aide, he did not qualify. *Id*. at ¶ 43. Because Mr. Arthur is subject to lifetime sex offender registration for second-degree rape,[4] he is prohibited by federal law from living in public housing. On August 24, 2017, an arrest warrant for unlawful entry was issued for Mr. Arthur based on his violations of the barring notices. *Id*. at ¶ 63. Plaintiffs allege that DCHA requested its issuance. *Id*. On August 30, 2017, Mr. Arthur entered Claridge Towers and was arrested by the Metropolitan Police Department for unlawful entry. *Id*. at ¶ 64. The unlawful entry charge against him was later dismissed. *Id*. at ¶ 76.

### III. STANDARD OF REVIEW

#### A.  <u>Motion to Dismiss</u>

For a complaint to survive a Federal Rules of Civil Procedure Rule 12(b)(6) motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). A court should "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). For a complaint to be facially plausible, its factual allegations must support "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663 (internal quotation marks and citations omitted). The complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims "across the line from conceivable to plausible." *Id.* at 680 (internal quotation marks and citations omitted).

---

[4]    *See* Case No. CT910774B, in the Circuit Court for Prince George's County; *see also United States v. Robert Arthur*, 2016 CF3 018394, in the Superior Court of the District of Columbia (finding Mr. Arthur guilty of failing to register as a sex offender).

**B.  Motion to Strike**

Pursuant to Federal Rules of Civil Procedure Rule 12(f), the court has discretion to strike from a pleading an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" to "avoid the time, effort, and expense necessary to litigate spurious issues." *Simba v. Fenty*, 754 F. Supp. 2d 19, 23 (D.D.C. 2010) (internal citations omitted); *see Bhatia v. 3M Co.*, 323 F. Supp. 3d 1082, 1092 (D. Minn. 2018) (specifically noting that "the Court may strike from a pleading any impertinent matter," which "includes an improperly pleaded claim for punitive damages"); *see also Pucci v. Carnival Corp.*, 160 F. Supp. 3d 1329, 1331 (S.D. Fla. 2016) ("[A] motion to strike is the appropriate mechanism to pursue removal of the prayer for…damages in the Complaint.") (internal citation omitted).

## IV. ARGUMENT

**A.  Motion to Dismiss**

**I.  Claims arising under Title II, Title III and Title IV of the ADA, the Rehabilitation Act, and the DCHRA are Time Barred by the DCHRA's One-Year Statute of Limitations.[5]**

Claims 1 (Title II of ADA, failure to accommodate against DCHA), 2 (Title II of ADA, failure to accommodate against CIH), 3 (Title III of ADA, failure to accommodate against CIH), 4 (Title IV of the ADA, retaliation and intimidation against DCHA and CIH), 6 (Section 504 of the Rehabilitation Act against DCHA), 8 (Section 504 of the Rehabilitation Act for retaliation against DCHA), and 11 (DC Human Rights Act ("DCHRA") against DCHA and CIH) should be dismissed with prejudice as time-barred under the DCHRA's one-year statute of limitations.

---

[5]     Should the Court deny Defendants' motion and reject its statute of limitations argument, Defendants respectfully request that the Court stay the instant proceedings and permit Defendants to take an immediate appeal because the issue involves "controlling questions of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292 (b).

Plaintiffs' factual allegations against DCHA and CIH arise from purported failures to accommodate and alleged retaliatory acts, occurring more than one year before the August 30, 2018 filing of this suit.

>    *a.  Application of the one-year statute of limitations.*

A one-year statute of limitations applies to Plaintiffs' DCHRA claims against DCHA and CIH. *See* D.C. Code § 2-1403.16 (stating that a "private cause of action pursuant to this chapter shall be filed in a court of competent jurisdiction within one-year of the unlawful discriminatory act, or the discovery thereof . . . ."). Neither the ADA nor the Rehabilitation Act has an explicit statute of limitations for filing claims of retaliation or discrimination based on disability. "Since 1830, 'state statutes have repeatedly supplied the periods of limitations for federal causes of action' when the federal legislation made no provision, and in seeking the right state rule to apply, courts look to the state statute 'most closely analogous' to the federal Act in need." *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995) (internal citations omitted) (addressing the issue of whether state or federal law provides the source of the statute of limitations for the Worker Adjustment and Retraining Notification Act and concluding that state law applied). "Because this penchant to borrow from analogous state law is not only 'longstanding,' but 'settled,' 'it is not only appropriate but also realistic to presume that Congress was thoroughly familiar with [our] precedents . . . and that it expect[s] its enactment[s] to be interpreted in conformity with them.'" *Id.* (citations omitted).

Accordingly, the D.C. Court of Appeals has held that the DCHRA's one-year statute of limitations "governs § 504 claims in this jurisdiction." *Jaiyeola v. District of Columbia*, 40 A.3d 356, 368 (D.C. 2012). The Court of Appeals discussed at length its rationale. It noted:

>    A state anti-discrimination statute that furnishes a sufficiently
>    broad cause of action for disability discrimination may be the

> 'most closely analogous' state statute to § 504; the specific cause
> of action for disability discrimination would be a better fit than the
> more general personal injury cause of action. In that case, the state
> anti-discrimination statute's own limitations period would be the
> appropriate period to borrow for § 504 claims.

*Jaiyeola*, 40 A.3d at 365.  The Court concluded that the DCHRA was sufficiently similar to

Section 504 of the Rehabilitation Act that the one-year statute of limitations should apply.  *Id.* at

366-368.  Courts in this District have applied this rationale.  *See Congress v. District of

Columbia*, 324 F. Supp. 3d 164, 171 (D.D.C. 2018) (Cooper, J.) (according "considerable

persuasive weight" to the D.C. Court of Appeals' decision on District law and applying the

DCHRA's one-year statute of limitations to a Rehabilitation Act claim and dismissing it as

untimely); *consider McFadden v. Wash. Metro. Area Transit Auth.*, 204 F. Supp. 3d 134, 142

(D.D.C. 2016) (Walton, J.) (applying the DCHRA one-year statute of limitations to a

Rehabilitation Act claim).

The same rationale aptly applies to Title II, III, and IV ADA claims as the purpose and

causes of action provided by the DCHRA are sufficiently similar.[6]  The DCHRA proscribes

"deny[ing], directly or indirectly, any person the full and equal enjoyment of the goods, services,

facilities, privileges, advantages, and accommodations of any place of public accommodations."

D.C. Code § 2-1402.31(a)(1).  It prohibits discrimination based on disability which includes "[a]

refusal to make reasonable accommodations in rules, policies, practices, or services, when these

accommodations may be necessary to afford any person equal opportunity to use and enjoy a

dwelling."  D.C. Code § 2-1402.21(d)(3)(B).  It further prohibits discrimination against any

---

[6]     Timing requirements between Title II and III should be equivalent.  *See Von Drasek v. Burwell*, 121 F. Supp. 3d 143, 156 n.5 (D.D.C. 2015) ("[N]either Title II nor Title III of the ADA contains any unique timing requirements that would serve to distinguish these statutory sections, and the trend among the circuits is to 'read . . . equivalent requirement[s]' into these different provisions.").

person who opposes an unlawful practice and prohibits coercion and intimidation.  D.C. Code §
2-1402.61(a)-(c).  These proscriptions mirror those of the ADA.

Title III of the ADA provides: "No individual shall be discriminated against on the basis
of disability in the full and equal enjoyment of the goods, services, facilities, privileges,
advantages, or accommodations of any place of public accommodation by any person who owns,
leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182.  Title II
of the ADA states that "no qualified individual with a disability shall, by reason of such
disability, be excluded from participation in or be denied the benefits of the services, programs,
or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. §
12132.[7]  Title IV of the ADA contains miscellaneous provisions that complement the above-
referenced statutes.  It prohibits, *inter alia*, discrimination "against any individual because such
individual has opposed any act or practice made unlawful by this Act" and prohibits coercion
and intimidation against individuals who "any individual in the exercise or enjoyment of, or on
account of his or her having exercised or enjoyed, or on account of his or her having aided or
encouraged any other individual in the exercise or enjoyment of, any right granted or protected
by this Act."  42 U.S.C. 12203(a)-(b).

"There is not a perfect match, but these core similarities outweigh the differences in
determining which statute of limitations to borrow for claims of disability discrimination . . . ."
*Jaiyeola*, 40 A.3d at 367; *see also Pierce v. D.C.*, 128 F. Supp. 3d 250, 266 n.11 (D.D.C. 2015)
(in a case where a profoundly deaf prisoner claimed that prison officials violated the ADA and

---

[7]      Title II of the ADA, 42 U.S.C. § 12132, incorporates the "remedies, procedures, and
rights set forth in section 505 of the Rehabilitation Act of 1973 (29 U.S.C. § 794a)" for "any
person alleging discrimination on the basis of disability."  42 U.S.C. § 12133.  This suggests that
the two federal statutes should be interpreted in the same manner because the same claims and
procedures apply.

the Rehabilitation Act, in part, because he was initially held in custody without any accommodation, officials assumed that lip-reading and exchanging written notes was sufficient, and ignored his request for an interpreter, the court interpreted both claims under the same analytical framework and noted: "[T]he D.C. Circuit has long held that the '[c]laims and defenses under [Section 504 and Title II] are virtually identical,' and that 'cases interpreting either [statute] are applicable and interchangeable[.]'"); *Walker v. District of Columbia*, 279 F. Supp. 3d 246, 271 (D.D.C. 2017) (where a plaintiff sued the District, in part, for retaliation in violation of the Rehabilitation Act and the ADA because she made complaints concerning special education students' services and accommodation, the court interpreted the statutes in the same way and noted: "Courts frequently interpret the ADA and the Rehabilitation Act the same way."); *Di Lella v. Univ. of the Dist. of Columbia David A. Clarke Sch. of Law*, 570 F. Supp. 2d 1, 7 (D.D.C. 2008) (where a learning-disabled student sued for violation of the DCHRA, the ADA, and Rehabilitation Act for failure to provide reasonable accommodations, the court analyzed the statutes in the same way "[b]ecause '[c]laims and defenses under the [ADA and the Rehabilitation Act] are virtually identical,' the court's analysis of [plaintiff's] causes of action based on these statutes is the same."); *Long v. Howard Univ.*, 439 F. Supp. 2d 68, 74 (D.D.C. 2006) (a doctoral candidate was diagnosed with pulmonary fibrosis, informed his university of the condition, but did not return full-time for several years and the university did not readmit him.  He sued, in part, for violation of the ADA and the Rehabilitation Act and in analyzing those claims, the court noted: "Aside from certain variations in substantive coverage that are not relevant here, Title III of the ADA and Section 504 of the Rehabilitation Act provide disabled individuals with essentially identical protections against discrimination.").

Given the similarities between the DCHRA, and the Rehabilitation Act and the ADA, the one-year statute of limitations under the District's anti-discrimination statute aptly applies in analyzing Plaintiffs' claims.

### b. One-year statute of limitations as applied to this case.

The factual allegations serving as the basis for Plaintiffs' discrimination and retaliation claims occurred more than one year before they initiated suit on August 30, 2018.  Plaintiffs allege the following:

- On or about January 18, 2017, CIH rescinded its prior practice of permitting Mr. Arthur to visit Ms. Arthur without having to comply with the phone call policy.  Am. Compl. at ¶ 21.
- On May 5, May 6, and June 17, 2017, Mr. Arthur was denied entry when Ms. Arthur did not answer his call.  *Id*. at ¶ 22.
- On June 17, 2017 SPO Edward Traynham denied Mr. Arthur access.  *Id*. at ¶¶ 23-25.
- On June 17, 2017, DCHA Officer Willie Street authorized issuance of a Bar Notice and Officer Traynham issued it.  *Id*. at ¶ 27.
- By letter dated June 17, 2017, notarized and delivered on June 19, 2017, Ms. Arthur wrote DCHA/Claridge Towers a letter requesting permission for Mr. Arthur to enter her residence without calling her.  *Id*. at ¶ 35.  There was no response.  *Id*. at ¶ 37.
- By letter dated June 19, 2017 and delivered on that date to Claridge Towers Management, Ms. Arthur reiterated her request.  *Id*. at ¶ 38.  There was no response.  *Id*. at ¶ 39.
- On June 26, 2017, Claridge Towers informed Ms. Arthur that a barring notice was issued against Mr. Arthur effective from June 17 to August 17, 2017.  *Id*. at ¶ 40.
- On June 20 and July 18, 2017, Ms. Arthur submitted formal requests for reasonable accommodation to DCHA for a live-in-aide and "additional hearing impaired hardware."  *Id*. at ¶ 42.  The request was approved but Mr. Arthur was rejected as a live-in-aide candidate on August 2, 2017.  *Id*. at ¶¶ 42-43.
- On June 20, 2017, Mr. Arthur submitted a request to DCHA to lift the June 17th bar notice.  *Id*. at ¶ 44.  It was not lifted.  *Id*. at ¶ 45.
- On July 6, 2017, Ms. Arthur executed a power of attorney for Mr. Arthur which was provided to Claridge Towers' management.  *Id*. at ¶ 41.

- On July 18, 2017, Mr. Arthur submitted a request to lift the June 17th bar notice but it was not lifted. *Id*. at ¶ 47.
- On August 10th and 18th, Mr. Arthur inquired whether the barring notice had expired. *Id*. at ¶¶ 48-49.
- On August 18, 2017, Mr. Arthur arrived at Claridge Towers wherein he was informed by Officer Traynham that there was a second bar notice. *Id*. at ¶¶ 50-52.
- On August 22, 2017, Officer Traynham refused entry to a service technician. *Id*. at ¶ 56.
- On August 24, 2017, Ms. Arthur submitted a Grievance Report to DCHA concerning the refusal to allow a technician in her apartment. *Id*. at ¶ 55. Ms. Arthur did not receive a response. *Id*. at ¶ 57.
- On August 24, 2017, an arrest warrant for unlawful entry was issued for Mr. Arthur based on violations of the bar notices. *Id*. at ¶ 64. DCHA allegedly requested its issuance. *Id*. at ¶ 63.

Assuming *arguendo* that these incidents qualify as failures to reasonably accommodate, each of these alleged acts occurred outside of the applicable one-year statute of limitations and cannot serve as a basis for failure to accommodate, DCHRA, or retaliation claims.

### c. *Course of conduct cannot save Plaintiffs' claims.*

Importantly, Plaintiffs cannot rely upon these allegations as a continuous course of conduct to support their claims. The doctrine of "continuing violations" is inapplicable to reasonable accommodation claims under the DCHRA, the Rehabilitation Act, and the ADA. This prohibition arises from the Supreme Court case of *AMTRAK v. Morgan*. In *Morgan*, the plaintiff sued AMTRAK for discrimination, retaliation, and hostile work environment based on race in violation of Title VII of the Civil Rights Act of 1964. *AMTRAK v. Morgan*, 536 U.S. 101, 105 (2002). The Ninth Circuit held that the plaintiff could sue on time-barred claims so long as it was "sufficiently related" to incidents in the statutory period or "part of a systematic policy or practice of discrimination" during that period. *Id*. at 105. The Supreme Court reversed on the discrimination and retaliation claims and affirmed as to the hostile work environment

claim. *Id*. As to the former claims, the Supreme Court held that Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *Id.* "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Id*. at 110. The Supreme Court further stated: "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id*. at 114.

"Courts have applied *Morgan*'s 'discrete act' rule to failure-to-accommodate claims ….." *Koch v. White*, 134 F. Supp. 3d 158, 166 (D.D.C. 2015) (citing *Long v. Howard Univ.*, 512 F. Supp. 2d 1, 16 (D.D.C. 2007) (a plaintiff moved for a new trial following a jury verdict stating that his Rehabilitation Act claim was time-barred by the statute of limitation but the court denied the motion, in part, because the jury was properly instructed and rejected his "continuing violations" theory in light of *Morgan* and the assertion that it only applies in employment cases)). "[M]any courts have held that an alleged failure to provide a requested accommodation under the Rehabilitation Act or the ADA is also a 'discrete act' under *Morgan* and thus cannot rest on a continuing violation theory to make it timely." *Id.* (citation omitted); *see also Long*, 512 F. Supp. 2d at 23 ("In short, the continuing violation doctrine is not legally viable for a failure to make reasonable accommodation claim under the Rehabilitation Act or ADA."); *Barrett v. Covington & Burling LLP*, 979 A.2d 1239, 1248 (D.C. 2009) (a DCHRA case, holding that "a reasonable accommodation claim is based on discrete acts, not on prolonged or repeated conduct" and thus, "the continuing violation doctrine does not apply to reasonable accommodation claims."); *Henneghan v. District of Columbia*, 2012 U.S. Dist. LEXIS 36122, *6 n.3 (D.D.C. Mar. 16, 2012) (in a Title II ADA and Section 504 Rehabilitation Act case, stating

that "[t]o the extent that Plaintiffs would argue that these  individual acts of discrimination and

retaliation are part of a continuing violation of the ADA and Rehabilitation Act, such an

argument would be without merit.").

> Because the continuing violation doctrine does not apply to
> reasonable accommodation claims, a plaintiff cannot 'reach back'
> and base a claim on otherwise time-barred incidents merely
> because they are connected to events which occurred within the
> limitations period. . . . Consequently, the statute of limitations bars
> any claim for relief based on denials of accommodation that
> occurred more than one year prior to the filing of appellant's
> complaint.

*Barrett*, 979 A.2d at 1249 (analyzing the DCHRA).

In an attempt to circumvent these principles, Plaintiffs make numerous allegations that

the purported "violations . . . were so severe and pervasive as to render Claridge Towers a hostile

living environment . . . ."  *See e.g.* Am. Compl. at ¶¶ 86, 102, 109, 116, 131, 143, 157.

Plaintiffs' reliance on the exception applicable to hostile work environment claims is without

merit.  The Supreme Court noted:

> Hostile environment claims are different in kind from discrete acts.
> Their very nature involves repeated conduct. The 'unlawful
> employment practice' therefore cannot be said to occur on any
> particular day. It occurs over a series of days or perhaps years and,
> in direct contrast to discrete acts, a single act of harassment may
> not be actionable on its own.

*Morgan*, 536 U.S. at 115 (internal citations omitted).  These principles are inapplicable to the

claims concerning reasonable accommodations because those involve "discrete acts." Plaintiffs

cannot save otherwise time-barred failure to accommodate claims under the continuing

violations doctrine.

In *Koch v. White*, the plaintiff sued the Securities and Exchange Commission ("SEC") and the Chairwoman, in part, for violation of the Rehabilitation Act for denying him reasonable accommodations for his disabilities.   *Koch*, 134 F. Supp. 3d at 160.  He filed a Second Amended Complaint alleging, in part, that the SEC "committed 'continuing violations' of the Rehabilitation Act of 1973" that led to his termination in October 2009. *Id*. at 163.   He further alleged that the SEC's failures to provide reasonable accommodations stretched back to the late 1990's. *Id*. at 165.  The defendant argued that the fact that the plaintiff made a number of accommodation requests unsuccessfully did not convert the discrete acts into a continuing violation and the doctrine only applied to claims of hostile work environment. *Id*. at 166.  Applying *AMTRAK v. Morgan*, the court agreed and concluded that the "[p]laintiff cannot rely on a 'continuing violation' theory to make actionable otherwise time-barred denials of reasonable accommodation . . . ." *Id*. *Morgan* "foreclose[d] Plaintiff's averment that the ongoing failure to accommodate was a continuing violation." *Id*. (citation omitted).  The Court dismissed the plaintiff's Rehabilitation Act claim. *Id*.

Accordingly, Plaintiffs' Claims 1-4, 6, 8, and 11 are time-barred and should be dismissed with prejudice.

## II. Plaintiff's remaining claims under Title II, Title III and Title IV of the ADA, the Rehabilitation Act, and the DCHRA must be dismissed.

Plaintiffs make additional allegations that fall outside of the applicable one-year statute of limitations.  However, Plaintiff's remaining claims under Title II, Title III and Title IV of the ADA, the Rehabilitation Act, and the DCHRA must be dismissed for failure to make a request for a reasonable accommodation in the first instance.  Plaintiffs allege:

- "During the week of September 24, 2017, friends were denied access when they came to pay their condolences for the death of Ms. Arthur's teenage grandson . . . ."  Am. Compl. at ¶ 58.
- "During the week of November 13, 2017, Ms. J. Jackson, a deaf and elderly friend of Ms. Arthur's, was turned away . . . ." *Id*.
- "Upon information and belief, others were denied entry since January 2017 when Ms. Arthur did not respond to calls . . . ." *Id*.
- "On October 26, 2018, DCHA accused Mr. Arthur of removing a strobe light system . . . ." *Id*. at ¶ 83.
- "On October 29, 2018, a . . . maintenance man entered Ms. Arthur's home . . . ." *Id*. at ¶ 84.
- "On February 22, 2019, Ms. Kenely-Tillery provided a letter to Ms. Arthur entitled 'Final Notice' . . . ." *Id*. at ¶ 85.

None of these incidents amount to failures to provide a reasonable accommodation as Ms. Arthur failed to allege that she requested accommodations related to these incidents.  Defendants could not have failed, no less denied, a reasonable accommodation where none was ever requested.  At most, Ms. Arthur made requests concerning Mr. Arthur and for additional hearing-impaired hardware.  These requests were addressed and reasonable accommodations provided. Ms. Arthur made no requests in regards to the above-referenced incidents nor indicated how she would otherwise be denied the benefits of public housing.  DCHA could not have had any kind of notice that the aforementioned incidents were related to Ms. Arthur's purported disability.

"An underlying assumption of any reasonable accommodation claim is that the plaintiff[] *has requested an accommodation* which the defendant[] has denied." *Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999) (where a plaintiff sued her employer for violation of the ADA for failure to reasonably accommodate her disability by providing a revised work schedule, the court ordered issuance of an order for summary judgment for the defendant because the plaintiff failed to show that she made a request for a revised schedule during the relevant time period and thus lacked a "fundamental element" of her ADA claim)  (citation

15

omitted) (emphasis added); *see also Ham v. Ayers*, 229 F. Supp. 3d 32, 38 (D.D.C. 2017) (where a plaintiff sued, in part, for discrimination in violation of the ADA for failure to provide a reasonable accommodation for his lung problems, the court granted a motion to dismiss because the plaintiff failed to allege that that he made a timely request or provided notice to defendant of his need for an accommodation and noting that " if an employer has a set of procedures for requesting accommodations, a failure to comply with the designated process might preclude suit by the employee."); *Chenari v. George Wash. Univ.,* 172 F. Supp. 3d 38, 54 (D.D.C. 2016) (in a Rehabilitation Act and ADA case, granting summary judgment, in part, because the plaintiff did not ask for an accommodation for his ADHD condition or indicate its impact on his education, the defendant could not have had actual or constructive notice of his disability); *consider Edwards v. United States EPA*, 456 F. Supp. 2d 72, 103 (D.D.C. 2006) (in regards to a Rehabilitation Act claim, concluding that plaintiff's failure to file a proper reasonable accommodation request pursuant to the employer's established policy "doom[ed] his claim.").

Ms. Arthur did not make requests related to the above-referenced incidents.  She cannot now claim a failure to provide reasonable accommodations or retaliation related thereto.  Her remaining claims under Title II, Title III and Title IV of the ADA, the Rehabilitation Act, and the DCHRA must be dismissed with prejudice.

### III. Alternatively, Claims 2 and 3 fail because Tile II and Title III of the ADA do not apply to CIH or Claridge Towers.

#### a.   Claim 2 fails to state a claim because CIH is not a public entity.

Claim 2 alleges that CIH is liable under Title II of the ADA because "[a]s an instrumentality of DCHA and through its extensive role in providing management for a government building, Defendant CIH is a public entity for purposes of Title II."  Am. Compl. ¶ 103.  Even if Claim 2 survives the statute of limitations bar, it fails to state a claim against CIH

because Title II of the ADA applies only to public entities.  42 U.S.C. § 12132; *see also Edison v. Douberly*, 604 F.3d 1307, 1308 (11th Cir. 2010) ("Only public entities are liable for violations of Title II of the ADA.").

Title II of the ADA, 42 U.S.C. § 12131, in relevant part provides: "[t]he term 'public entity' means – (A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority…."  Plaintiff wrongly asserts that CIH is an "instrumentality."  An "instrumentality of a state" for purposes of 42 U.S.C. § 12131 "refers to governmental units or units created by them."  *Edison*, 604 F.3d at 1310; *see also Taylor v. Washington Metro. Area Transit Auth.*, 109 F. Supp. 2d 11, 18 (D.D.C. 2000) (finding that WMATA is an "instrumentality of three separate jurisdictions" because it was created by a "[c]ompact signed by Maryland, Virginia, and the District of Columbia, and agreed upon by Congress").  CIH is not a governmental unit and it was not created by the government.  It is a private company that manages over 3,000 apartments in the Washington DC area.  CIH Properties, Inc., https://www.cihproperties.com/knowledge/ (last visited May 9, 2019).

Additionally, "a private corporation is not a public entity merely because it contracts with a public entity to provide some service."  *Edison*, 604 F.3d at 1310; *see also Green v. City of New York*, 465 F.3d 65, 79 (2d Cir. 2006) (finding that a district court properly dismissed a Title II ADA claim against a private hospital because "[a] private hospital performing services pursuant to a contract with a municipality even if it does so according to the municipality's rules and under its direction, is not a creature of any governmental entity.  Instead it is a parallel private entity"); *Lee v. Corr. Corp. of Am.*, 61 F. Supp. 3d 139, 143 (D.D.C. 2014) (quoting *Edison v. Douberly* in finding that a private prison was not liable under Title II merely because it

contracted with the State). Thus, CIH's "role in providing management for a government

building" does not make it an instrumentality of a State and Ms. Arthur's Claim 2 under Title II

of the ADA should, therefore, be dismissed with prejudice against Defendant CIH.

> **b. Claim 3 fails to state a claim because Claridge Towers is not a place of public accommodation.**

Claim 3 alleges that CIH "failed to accommodate Plaintiff Evelyn Arthur's disability and

intentionally discriminated against her on the basis of her disability in violation of the ADA."

Am. Compl. ¶ 109. Even if Claim 3 survives the statute of limitations bar, it fails to state a claim

against CIH. Title III of the ADA, 42 U.S.C. §§ 12181-12189, in relevant part provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of *any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.*

(emphasis added). A place of public accommodation within the meaning of the relevant sections

of the title includes "an inn, hotel, motel, or other place of lodging," and "a day care center,

senior citizen center, homeless shelter, food bank, adoption agency, or other social service center

establishment." 42 U.S.C. §§ 12181(7)(A),(K). Ms. Arthur resides in an apartment at Claridge

Towers – a 343 unit residential facility for seniors and disabled citizens.[8] Ms. Arthur wrongly

asserts that Claridge Towers – a residential facility – is a place of public accommodation as

defined by 42 U.S.C. §§ 12181 and 12181(7)(A). As the implementing regulations make clear,

Title III applies to transient housing and not residential facilities.

> *Place of public accommodation* means a facility…whose operation…fall within at least one of the following categories –
> (1) Place of lodging…a facility is a "place of lodging" if it is –
> (i) An inn, hotel, or motel; or

---

[8]      District of Columbia Housing Authority, *Claridge Towers*, *available at*
http://www.dchousing.org/property.aspx?id=6F (last visited Jan. 9, 2019).

(ii) A facility that –
(A) Provides guest rooms for sleeping for stays that primarily are short-term in nature (generally 30 days or less) where the occupant does not have the right to return to a specific room or unit after the conclusion of his or her stay; and
(B) Provides guest rooms under conditions and with amenities similar to a hotel, motel, or inn . . . .

28 C.F.R. § 36.104.  Residential apartment complexes are not considered places of public accommodation as contemplated under these statutes.  This jurisdiction has concluded as much as to a certain property managed by CIH.  In *Parham*, the plaintiff brought a Title III ADA claim against the defendants, including CIH Properties, Inc. which managed the residential apartment complex.  *Parham v. CIH Props.*, 2015 U.S. Dist. LEXIS 119816, *10 (D.D.C. Sept. 6, 2015).  The Court concluded that "private apartment complexes do not qualify as 'public accommodations' for purposes of the ADA, *even if they offer publicly subsidized housing*."  *Id.* (citations omitted) (emphasis added).  The Court rejected the plaintiff's cause of action for failure to accommodate under the ADA.  *Id.*; *consider Parham v. CIH Props.*, 148 F. Supp. 3d 5, 11 (D.D.C. 2015) ("[P]rivate apartment complexes do not qualify as 'public accommodations' for purposes of the ADA.").

Numerous jurisdictions have held that residential apartment complexes, even those receiving federal subsidies, are not places of public accommodation.  *See e.g. Lancaster v. Phillips Invs., LLC*, 482 F. Supp. 2d 1362, 1367 (M.D. Ala. 2007) (holding that Title III does not apply to residential complexes because they are not "places of lodging"; by nature, residents are not transient but more permanent); *Hooper v. United States HUD*, 2017 U.S. Dist. LEXIS 84164 *9 (D. Or. May 31, 2017) (holding that public housing unit was not a place of public accommodation); *Arceneaux v. Marin Hous. Auth.*, 2015 U.S. Dist. LEXIS 67930, * 20-21 (N.D. Ca., May 26, 2015) (same); *Mahdi Sufi El v. People's Emergency Ctr.*, 315 F. Supp. 3d 837, 844

(E.D. Pa. 2018) (federally subsidized apartment not public accommodation); *McColm v. San Francisco Hous. Auth.*, 2007 U.S. Dist. LEXIS 41631 * 32-33 (N.D. Ca. May 29, 2007) (residential portions of public housing developments "do not fall within the bounds of the ADA."); *Torrence v. Advanced Home Care, Inc.*, 2009 U.S. Dist. LEXIS 42954, *14 (N.D. Ill. May 21, 2009) (finding that the legislative history indicates residential apartment buildings are not places of public accommodation and that federal district courts have held residential apartment buildings are not public accommodations under Title III) (citing H.R. Rep. No. 101-485(II), at 100 (1990)).  Since Claridge Towers is a residential complex and not "a place of public accommodation," Title III is inapplicable and Ms. Arthur's claim based thereupon should be dismissed.[9]

### IV. Claim 10 should be dismissed because District of Columbia Retaliatory Action ("DCRA"), D.C. Code § 42-3505.02, does not provide a private cause of action or monetary damages.

Claim 10 presumably alleges that strict enforcement of the visitor policy (which Plaintiffs describe as the "Phone Call Rule"); the alleged denial of Mr. Arthur's appeals of the Bar Notices; the alleged issuance of the Second Bar Notice without proper notice; and DCHA's alleged request to MPD to arrest Mr. Arthur for violating the "unjustified" Bar Notices, all constituted retaliation in response to Ms. Arthur's reasonable accommodation requests.  Am.

---

[9]       In the instance that this Court does not dismiss this claim, we respectfully submit that the prayer for monetary relief should be stricken.  Monetary relief is not available to private individuals under Title III.  42 U.S.C. § 12188(a)(1) (remedies available under Title III are the same as those under Title II of the Civil Rights Act of 1964).  A private individual may only obtain preventive or injunctive relief for Title III violations.  *See* 42 U.S.C. § 2000a-3(a) (private individual may only seek injunctive relief); *see also Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968) ("When a plaintiff brings an action under [Title II of the Civil Rights Act of 1964], he cannot recover damages").

Compl. at ¶¶ 118, 127, and 136.[10]   The Arthurs claim these actions amounted to a retaliatory

action in violation of the DCRA and seek redress before this Court.  The DCRA does not provide

for a private cause of action.

The DCRA prohibits any retaliatory action against a tenant who exercise rights conferred

to the tenant by law.  D.C. Code § 42-3505.02(a).  The DCRA is enforced by "an array of

penalties (including civil fines) which may be imposed for conduct found to constitute retaliatory

action."  *Twyman v. Johnson*, 655 A.2d 850, 856 (D.C. 1995) (citing D.C. Code § 45-2591, now

codified at D.C. Code § 42-3509.01).

The D.C. Court of Appeals has held that the DCRA does not create a cause of action for

civil damages because (1) it does not expressly create an action for damages; (2) the legislature

which enacted the DCRA did not intend for there to be other remedies than those stated in the

statute; and (3) there are alternative avenues for remedy even if there are no civil damages

available.  *Id.* at 856-57.[11]   The Court looked to the language, structure, and source of the DCRA

to detect whether there was legislative intent to create a cause of action for civil damages.  *Id.* at

856-57 (citation omitted).  The Rental Housing Act, which DCRA is part of, only expressly

authorizes the Rent Administrator and the Rental Housing Commission to award damages and

for only two forms of conduct "among the many that may constitute retaliatory action: unlawful

rent increases and unlawful reduction or elimination of services."  *Id.* at 857.  Based on the

---

[10]    Plaintiffs do not specify the actions at issue in Claim 10 but presumably they arise from
the same purported conduct providing the basis for the ADA and Rehabilitation Act retaliation
claims.

[11]    On questions involving state law, deference should be accorded to the D.C. Court of
Appeals.  *See Congress v. District of Columbia*, 324 F. Supp. 3d 164, 173 (D.D.C. 2018) (stating
that deference is owed to the D.C. Court of Appeals on matters of D.C. law) (citing *Williams v.
Martinez*, 586 F.3d 995, 1001 (D.C. Cir. 2009) ("[O]n questions of District of Columbia law this
court defers to the D.C. Court of Appeals.")).

highly restrictive remedy structure, the court thought "it improbable that the legislature, having provided thus specifically for damages, meant also to create a cause of action in court for civil damages without expressly having said so." *Id.* at 857 (citing *Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, 533 (1989) (if a statute provides one sort of remedy, "courts must be especially reluctant to provide additional remedies")).  Additionally, the legislative history was silent on whether the enacting council intended there to be  a cause of action for civil damages.  *Id.* at 857.

The Court also concluded that a tenant would not be left uncompensated for retaliatory actions by the landlord because there was a plethora of ways a tenant may recover.  "[Section 42-3505.02] is part of an elaborate remedial scheme in the District of Columbia governing landlord and tenant relations. Finding a civil cause of action for damages implicit in the statute is unnecessary to effectuate its remedial purpose." *Id.* at 858.  For these reasons, the court in *Twyman* held that there is no private cause of action for civil damages under the DCRA.  This Court should dismiss Claim 10 for the same reasons.[12]

Lastly, should the court find that a private cause of action exists under the DCRA, Mr. Arthur does not have standing to assert such a claim because he is not, nor has he ever been, a tenant of Claridge Towers.

---

[12]     If this Court decides not to dismiss this claim, we ask this Court to strike the prayer for relief from this claim.  The DCRA does not have any language granting a right for civil damages. The statutory construction of this code implies that the enacting District of Columbia Council did not intend for a private remedy.  *Twyman*, 655 A.2d at 857 (stating that only the Rent Administrator and Rental Housing Commission are expressly authorized to award damages, and only for two conducts: unlawful rent increases and unlawful reduction or elimination of services).

**V. Claim 12 should be dismissed because Ms. Arthur failed to state a claim for breach of the common law implied warranty of habitability and covenant of quiet enjoyment.**

Claim 12 alleges that DCHA and CIH "unreasonably obstructed Plaintiff Evelyn Arthur's right to receive guests, caregivers, and repairmen…" in violation of the common-law implied warranty of habitability and the implied covenant of quiet enjoyment   Am. Compl. at ¶ 159. Plaintiff Evelyn Arthur fails to allege a breach of the common law implied warranty of habitability or implied covenant of quiet enjoyment, and therefore Claim 12 should be dismissed.

> **a.  *Ms. Arthur fails to state a claim for the breach of the implied warranty of habitability.***

The implied warranty of habitability is measured by the standards set out in the Housing Regulations of the District of Columbia ("D.C. Housing Code") and breaches thereof.  *See Javins v. First Nat'l Realty Corp.*, 428 F.2d 1071, 1072 (D.C. Cir. 1970), *cert. denied*, 400 U.S. 925, 27 L. Ed. 2d 185, 91 S. Ct. 186 (1970) ("[A] warranty of habitability, measured by the standards set out in the Housing Regulations for the District of Columbia, is implied by operation of law into leases of urban dwelling units covered by those Regulations and breach of this warranty gives rise to the usual remedies for breach of contract.").  Indeed, the warranty of habitability involves the *physical condition* of the premises, not failure to accommodate or modify the premises.  *See, e.g., Beltway Management Co. v. Lexington-Landmark Ins. Co.,* 746 F. Supp. 1145, 1150 (D.D.C. 1990) ("The warranty of habitability insures that leased premises are fit for use."); *George Washington University v. Weintraub*, 458 A.2d 43, 47 (D.C. 1983) ("To fulfill [the warranty of habitability] landlords are required to comply substantially with the Housing Regulations of the District of Columbia (Code), which provide, inter alia, that every premises shall be maintained and kept in repair so as to provide decent living accommodations for the occupants.") (citations omitted).

Here, Ms. Arthur alleges that DCHA and CIH "unreasonably obstructed [her] right to receive guests, caregivers, and repairmen." However, the Amended Complaint is void of any facts to support a claim that DCHA or CIH violated the D.C. housing code or that Ms. Arthur's apartment is not "fit for use." Therefore, Ms. Arthur's breach of the warranty of habitability claim should be dismissed.

### b. The claim for breach of the common law implied covenant of quiet enjoyment fails because there has been no disturbance in Ms. Arthur's possessory interest.

The common law right of quiet enjoyment is a property concept derived from the lease between the tenant and the landlord. *See Sobelsohn v. Am. Rental Mgmt*. Co., 926 A.2d 713, 715 (D.C. 2007). The covenant of quiet enjoyment is implied in leases to "assure the tenant that his [or her] possessory interest [will] not be invaded by the landlord or by anyone with rights superior to those of the landlord." *Sobelsohn,* 926 A.2d at 715. To support a claim for breach of the covenant of quiet enjoyment, a tenant must allege that the landlord's conduct interfered or disturbed his or her *possessory interest* in the premises. *See Whole Foods Mkt. Grp. v. Wical L.P.*, 288 F. Supp. 3d 176, 191 (D.D.C. 2018) ("The bar for finding a breach of the covenant of quiet enjoyment is high – there is no breach of the covenant 'unless there is an eviction from, or some actual disturbance in, the possession by the landlord or by some third person under paramount title.'") (citing *Hyde v. Brandler*, 118 A.2d 398, 400 (D.C. 1955) ("The covenant [of quiet enjoyment] is not broken unless there is an eviction from, or some actual disturbance in, the possession by the landlord or by some third person under paramount title.")).

Examples of disturbances to a tenant's possessory interest include unauthorized possession of part of the premises, excessive noise, and unreasonable interference with a tenant's ability to reopen its store. *See e.g. Sobelsohn,* 926 A.2d at 717-719 (finding a disturbance in tenant's possessory interest where repair and improvement projects resulted in loud drilling

noises during daytime hours and intrusion of tenant's right to make full use of his roof deck); *Whole Foods Mkt. Grp.*, 288 F. Supp. 3d at 191 (finding a disturbance in tenant's possessory interest where landlord refused to consent to the tenant's architectural plans which were required to obtain a permit to rebuild the premises and reopen its store).

Here, Ms. Arthur was not evicted in any manner nor disturbed in possession of her apartment. She merely alleges that DCHA's enforcement of its Phone Call Rule and Bar Notices breached the common law implied covenant of quiet enjoyment because she could not receive visitors (one of whom was barred from the premises). Ms. Arthur has not shown she was deprived of some possessory interest in her apartment. Therefore, this Court should dismiss Claim 12.

## VI.  Mr. Arthur fails to state a claim pursuant to Section 1983 (Claim 15) for lack of an enforceable right.

Plaintiff Robert Arthur asserts a claim for violation of his procedural rights under 42 U.S.C. § 1983. Am. Compl. at ¶ 169. He claims that DCHA failed to "provide an opportunity . . . to dispute the relevance of [his] criminal background information prior to the denial of his application to be a live-in-aide," in violation of his purported procedural rights under 42 U.S.C. § 13663(d). *Id.* at ¶¶ 167-168. However, Ms. Arthur has no enforceable right under Section 13663(d) because Ms. Arthur was not an "applicant" seeking admission to public housing under Section 13663(d).

Pursuant to Section 1983,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

> injured in an action at law, suit in equity, or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983.  The provision "does not confer substantive rights in and of itself; rather, it is

exclusively remedial, providing a cause of action for violations of the substantive rights

conferred by the Constitution or federal statute."  *Hamilton v. Dist. of Columbia*, 720 F. Supp. 2d

102, 110 (D.D.C. 2010) (citation omitted).  "Section 1983 thus confers a private right of action to

safeguard certain rights created by federal statutes. Therefore, to bring a Section 1983 claim, a

plaintiff must assert a violation of a federal *right*, not merely a violation of federal *law*."  *Barry*

*Farm Tenants & Allies Ass'n v. D.C. Hous. Auth.*, 311 F. Supp. 3d 57, 69 (D.D.C. 2018)

(citations omitted)(emphasis in original).

Here, Mr. Arthur fails to assert an enforceable right under Section 13663(d) because it is

inapplicable to him.  Ms. Arthur presented Mr. Arthur as a live-in-aide candidate in her request

for a reasonable accommodation.  Mr. Arthur was rejected by DCHA because he was subject to

sex offender registration.  Mr. Arthur was not an applicant, resident, or a recipient of any public

housing benefits.

Nevertheless, he asserts that

> [b]efore an adverse action is taken with respect to an applicant for
> federally assisted housing on the basis that an individual is subject
> to a lifetime registration requirement under a State sex offender
> registration program, the public housing agency obtaining the
> record shall provide the tenant or applicant with a copy of the
> registration information and an opportunity to dispute the accuracy
> and relevance of that information.

42 U.S.C. § 13663(d).[13]  An "applicant" is "a person or a family that has applied for

housing assistance."  24 C.F.R. § 5.403; *see also* 24 C.F.R. §960.102(a)(2) (stating that

---

[13]     D.C. regulations provide:

"applicant" is defined in "24 C.F.R. part 5, subpart D"); 24 C.F.R. § 5.403 (defining "family" as including a single person or a group of persons residing together).  Federal law further provides: "Notwithstanding any other provision of law, an owner of federally assisted housing shall prohibit admission to such housing for any household that includes any individual who is subject to a lifetime registration requirement under a State sex offender registration program."  42 U.S.C. § 13663(a).  These federal provisions are inapplicable here because Mr. Arthur was not an "applicant" to public housing.  He was not a person or part of a family applying for housing assistance.  Rather, Ms. Arthur presented him as a live-in-aide candidate as part of her request for a reasonable accommodation.

Mr. Arthur has no statutorily protected interest at stake.  As a live-in-aide candidate, his connection to public housing is tenuous at best and his position remained subject to the whim of DCHA.  A live-in-aide is "subject to approval of DCHA prior to occupancy."  14 DCMR § 6121.3.  At any time, DCHA could have refused approval or even withdrawn approval for reasonable cause.  *Id*.  Notably, live-in-aides are "not considered to be other adult Family members" of a tenant's household and "are never considered dependents."  14 DCMR § 5999.  Nor are they named on a tenant's lease.  *See* 14 DCMR § 6121.3 ("A live-in aide resides in a unit identified on a lease, but is not a lessee with rights of tenancy, and does not possess the right to participate in the resident council."); 14 DCMR § 6121.5 ("the name of an approved live-in

---

DCHA shall prohibit admission of any family that includes any individual who is subject to a lifetime registration requirement under any sex offender registration program (e.g., state, local or international). DCHA shall, upon request, provide the tenant or applicant with a copy of the registration information and an opportunity to dispute the accuracy and relevance of that information.

14 DCMR § 6109.6(c).

aide shall not be added as a Lessee to the Dwelling Lease, but shall be added as a live-in

aide prior to taking up occupancy of a unit, otherwise such person is deemed to be an

unauthorized occupant.").

Under these circumstances, 42 U.S.C. § 13663(d) does not accord Mr. Arthur any

enforceable right and his Section 1983 claim should be dismissed with prejudice.

**VII. Plaintiff's Breach of Lease claim (Claim 16) should be dismissed with prejudice for failure to state a claim for relief.**

Plaintiff Evelyn Arthur asserts a claim against DCHA for breach of lease in violation of

Sections 15.2 and 15.3 of her lease, governing scheduled and unscheduled inspections.  Am.

Compl. ¶¶ 170-171.  She claims that "the unauthorized and unlawful entry of [a DCHA] agent

into [her] home and the agent's photography inside her home on October 29, 2018, constitute a

breach of Sections 15.2 and 15.3 of her lease, governing scheduled and unscheduled

inspections." Am. Compl. at ¶ 170.  This claim must be dismissed for failure to state a cause of

action.

Ms. Arthur failed to demonstrate, no less, allege what damages or relief she seeks as a

result of the purported breach of lease.  "In the District of Columbia, the elements of a breach of

contract claim are: '(1) a valid contract between the parties; (2) an obligation or duty arising out

of the contract; (3) a breach of that duty; and (4) damages caused by breach.'" *Gregorio v.

Hoover*, 238 F. Supp. 3d 37 (D.D.C. 2017) (citations omitted).  Generally, a party may rescind a

contract where there is a total breach.

> It is an elementary principle of contract law that a contract may not
> be rescinded for breach unless the breach is total. In other words, if
> a party's breach of a contract is immaterial, the aggrieved party
> may not cancel the contract and may only sue to collect damages
> resulting from the partial breach.

28

*Bahiman v. 3407-9-11 29th St., N.W., Inc.*, 1990 U.S. Dist. LEXIS 9066, *4-5 (D.D.C. July 20, 1990). Ms. Arthur fails to allege sufficient facts to show that there was a total breach of the lease, any resulting damages, and fails to identify the remedy she seeks for any purported breach of the lease. If she seeks recession or cancellation of the lease, Defendant has no issue with revoking the lease and terminating the parties' landlord-tenant relationship. If there are otherwise no damages to Plaintiff, there can be no breach of the lease for failing to meet a fundamental element of the claim.

Under these circumstances, Plaintiff's breach of the lease claim (Claim 16) must be dismissed with prejudice for failure to state a cause of action.

## VIII. Plaintiff's Fair Housing Act claim (Claim 18) should be dismissed for failure to state a cause of action.

Ms. Arthur asserts that DCHA violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, by failing to accommodate her disability and intentionally discriminating against her on the basis of her disability. Ms. Arthur asserts that "continuing violations" from January 2017 until after the filing of the lawsuit "were so severe and pervasive as to render Claridge Towers a hostile living environment for Ms. Arthur." *See* Am. Compl. at ¶ 174. However, as discussed below, the "continuing violations" doctrine is inapplicable to failure-to-accommodate claims under the FHA. Moreover, because DCHA granted Ms. Arthur's reasonable accommodation requests, the FHA claim should be dismissed.

### a. The doctrine of "continuing violations" is inapplicable to reasonable accommodation claims under the FHA.

Just as Ms. Arthur cannot assert a continuing violation theory under her Rehabilitation Act and ADA claims, she may not assert the "continuing violations" doctrine under her FHA claim. As discussed, *supra* Section A.I.c., courts have found that the doctrine of "continuing

violations" is inapplicable to reasonable accommodation claims under the Rehabilitation Act and the ADA. *See supra* Section A.I.c. Instead, for failure-to-accommodate claims, courts apply *Morgan's* "discrete act" rule. *Id.*; *see also Koch*, 134 F. Supp. 3d at 166.

The same is true for failure-to-accommodate claims arising under the FHA because the rights and obligations concerning reasonable accommodations under the Rehabilitation Act, ADA and FHA are sufficiently similar. Indeed, courts look to case law interpreting the Rehabilitation Act and ADA when interpreting the reasonable accommodation requirements under the FHA. *See, e.g.*, *Giebeler v. M&B Assocs.* 343 F. 3d 1143, 1148-1149 (9th Cir. 2003) ("… we have applied [Rehabilitative Act] regulations and case law when interpreting the [FHA's] reasonable accommodation provisions.") (internal citation omitted); *United States v. California Mobile Home Park Management Co.*, 29 F.3d 1413, 1417 (9th Cir. 1994) (finding that "Congress based the [FHA's] reasonable accommodations provision on the 'regulations and caselaw dealing with discrimination on the basis of handicap' under section 504 of the Rehabilitation Act ….") (internal citations omitted); *Walker*, 279 F. Supp. 3d at 271; *Parham*, 2015 U.S. Dist. LEXIS 119816, *11 (explaining that the "FHA, RA, and DCHRA are generally interpreted to be coextensive with regards to the requirement to reasonably accommodate."). Thus, the "discrete act" rule applied to failure-to-accommodate claims brought under the Rehabilitation Act and the ADA aptly applies to failure-to-accommodation claims under the FHA.

Here, as discussed, *supra* Section A.I.c., DCHA's purported failures to provide reasonable accommodations constitute "discrete acts," not continuing violations. DCHA's purported refusals are limited to just two incidents: (1) Ms. Arthur's requests for reasonable accommodation for a live-in-aide and (2) her request for "additional hearing impaired hardware."

30

Am. Compl. at ¶ 42.  As such, Ms. Arthur's theory that the purported "violations . . . were so severe and pervasive as to render Claridge Towers a hostile living environment . . . ." must fail. Am. Compl. at ¶ 174; *see also Morgan*, 536 U.S. at 115; *supra* Section A.I.c.

### b. DCHA provided Ms. Arthur with what she requested: a live-in aide and additional hardware.

#### i. It is undisputed that DCHA granted Ms. Arthur's requests for reasonable accommodations.

Section 3604(f)(2) of the FHA makes it unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling because of a [disability][14] of that person.  42 U.S.C. § 3604(f)(2)(A).  Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  *Id*. at 3604(f)(3)(B).

To prove a failure to accommodate claim under the FHA, a plaintiff must show, among other things, "that defendants refused to make the requested accommodation."  *See Parham*, 2015 U.S. Dist. LEXIS 119816, *12 (listing the factors a plaintiff must prove to make out a failure to accommodate claim under the FHA) (citing *United States v. District of Columbia*, 538 F. Supp. 2d 211, 217-18 (D.D.C. 2008), and *Flemmings*, 198 F.3d at 861 (The "underlying assumption of any reasonable accommodation claim is that the plaintiff. . . has requested an accommodation which the defendant. . . has denied.").

In *Parham*, the plaintiff brought a claim under the FHA alleging that, among other things, CIH Properties, Inc. refused to grant her request for a reasonable accommodation to move to an

---

[14]     The Fair Housing Act uses the term "handicap," synonymously with the term "disability."  *See Bragdon v. Abbott*, 524, U.S. 624, 631 (1998) (definition of "disability" under ADA taken almost verbatim from definition of "handicap" under Fair Housing Act.").

ADA-accessible first-floor unit.  *Parham*, 2015 U.S. Dist. LEXIS 119816, *3-4.  Despite being offered the only available first-floor unit, the plaintiff refused to accept the offer citing the unit's "remote" and "hilly" location and the dim lighting in the courtyard."  *Id*. at *6.  The court found that in offering the plaintiff the accommodation she requested – a first-floor unit – CIH had made a good-faith effort to provide a reasonable accommodation.  In denying the plaintiff's reasonable accommodation claim, the court stressed that the law does not entitle plaintiff to get exactly what she wants, but only what is reasonable.  *Id*. at 13 (a plaintiff is "not entitled to the exact accommodation of its choice.").

Similarly, here, Ms. Arthur has not shown that defendants refused to make a reasonable accommodation.  As discussed, *supra* Section A.I.b., on June 20 and July 18, 2017, Ms. Arthur submitted formal requests for reasonable accommodations for permission to have a live-in aide and for additional hearing-impaired hardware.  It is undisputed that on July 20, 2017, DCHA approved those requests.  Am. Compl. at ¶ 42.  DCHA installed "additional lights and equipment in Ms. Arthur's apartment and provided rechargeable watches that flash to signal an incoming video relay call."  Am. Compl. at ¶ 82.  Therefore, DCHA granted Ms. Arthur's request for additional hardware.

### ii. Approval of Mr. Arthur as a live-in aide cannot be considered a reasonable accommodation.

Ms. Arthur also requested a live-in-aide as a reasonable accommodation.  DCHA approved this request.  Ms. Arthur presented Mr. Arthur as a live-in-aide candidate, which subjected Mr. Arthur "to approval of DCHA prior to occupancy."  14 DCMR § 6121.3.  However, Mr. Arthur was not qualified to serve as a live-in aide because he was subject to sex offender registration.  The Quality Housing and Work Responsibility Act of 1998 (the 1998 Act) prohibits DCHA from admitting into public housing any individual who is subject to a lifetime

sex offender registration requirement.[15]  It is undisputed that DCHA would have violated federal

law, its own applicant selection policy, and lease with Ms. Arthur, which was adopted pursuant

to federal law and regulations, had it approved Mr. Arthur as the live-in aide.  *See Williams v.

New York City Hous. Auth.* (2012, ED NY) 879 F Supp. 2d 328 (even assuming that plaintiff's

request for reasonable accommodation was properly presented to authority, it was undisputed

that housing authority would have violated its own tenant selection policy, which was adopted

pursuant to federal regulations and federal consent decree, and federal law had it granted his

request; requiring such action from housing authority would be patently unreasonable).  DCHA

must comply with the federal prohibition of lifetime sex offenders from public housing.  Because

approval of Mr. Arthur as a live-in is legally impermissible, it cannot be considered a reasonable

accommodation and his denial cannot be considered a failure to provide a reasonable

accommodation.

---

[15]     *See* 42 U.S.C. § 13663(a) (… "an owner of federally assisted housing shall prohibit
admission to such housing for any household that includes any individual who is subject to a
lifetime registration requirement under a State sex offender registration program."); *see also* 24
C.F.R. § 960.204(a)(4) ("The PHA must establish standards that prohibit admission to the PHA's
public housing program if any member of the household is subject to a lifetime registration
requirement under a State sex offender registration program."); 14 DCMR § 5804.1(b) ("DCHA
shall terminate participation if "[a]ny member of the household is subject to a lifetime
registration requirement under a state or District of Columbia sex offender program.").  The
public housing lease, of which Ms. Arthur has a copy, also prohibits sex offenders from living in
public housing.

      Moreover, the legislative history of Section 13661 indicates that Congress intended to
prevent lifetime-registered sex offenders from residing in federally assisted housing.  When the
conference report for the 1998 Act was presented, Senator Al d'Amato stated that, "at [his]
request," the Act included a "provision to ban child molesters and sexually violent predators
from receiving federal housing assistance." 144 Cong. Rec. S11841 (daily ed. Oct. 8, 1998).
Courts have Courts have likewise recognized this objective.  *See Zimbelman v. Southern Nev.
Reg'l Hous. Auth.*, 111 F. Supp. 3d 1148, 1155 (D. Nev. 2015) ("Congress passed 42 U.S.C. §
13663 to prohibit sex offender registrants in housing programs.").

### *iii. DCHA could not have failed, no less denied, a reasonable accommodation where none was ever requested.*

Ms. Arthur's FHA claim must also be dismissed, in part, for failure to make a request for a reasonable accommodation in the first instance. *See supra* Section II. Ms. Arthur alleges, among other things:

- "During the week of September 24, 2017, friends were denied access when they came to pay their condolences for the death of Ms. Arthur's teenage grandson . . . ." Am. Compl. at ¶ 58.
- "During the week of November 13, 2017, Ms. J. Jackson, a deaf and elderly friend of Ms. Arthur's, was turned away . . . ." *Id.*
- "Upon information and belief, others were denied entry since January 2017 when Ms. Arthur did not respond to calls . . . ." *Id.*
- "On October 26, 2018, DCHA accused Mr. Arthur of removing a strobe light system . . . ." *Id.* at ¶ 83.
- "On October 29, 2018, a . . . maintenance man entered Ms. Arthur's home . . . ." *Id.* at ¶ 84.
- "On February 22, 2019, Ms. Kenely-Tillery provided a letter to Ms. Arthur entitled 'Final Notice' . . . ." *Id.* at ¶ 85.

None of these incidents amount to failures to provide a reasonable accommodation as Ms. Arthur did not allege that she requested accommodations related to these incidents. Therefore, for the reasons stated, *supra* Section II, Plaintiff's claims related to the above-referenced incidents must be dismissed with prejudice. *See also Flemmings*, 198 F. 3d at 861.

## Motion to Strike

### I. Plaintiffs may not seek punitive damages for alleged violations of the Americans with Disabilities Act and the Rehabilitation Act.

Should any of Plaintiffs' ADA or Rehabilitation Act claims survive, punitive damages cannot be sought. The Arthurs may not seek punitive damages from DCHA for claims 1-4, 6, and 8 under Title II and Section 503 of the ADA and Section 504 of the Rehabilitation Act. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002) ("Because punitive damages may not be awarded

in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act."); *see also Pierce v. District of Columbia*, 128 F. Supp. 3d 250, 278, n.14 (D.D.C. 2015) (adopting *Barnes* in footnote 14, "Punitive damages are not recoverable in private suits under Title II of the ADA or Section 504 of the Rehabilitation Act."); *see also* 42 U.S.C. § 12203(c) (relief under Title II of the ADA and Section 504 shall be the remedies available for claims under Section 503 of the ADA).

In *Barnes*, the Court addressed whether punitive damages for discrimination are recoverable against public entities when the relief granting statute does not expressly provide specific remedies. Title VI does not define the scope of relief, so the Court recognized "the traditional presumption in favor of *any appropriate relief* for violation of a federal right."[16] *Id.* at 185 (emphasis added). The Court applied a contract-law analogy under the Spending Clause to define the scope of appropriate relief granted for private actions under Title VI. *Id.* at 186. In applying the contract-law analogy, the Court analogized recipients of federal funds as those entering into contract with Congress under certain terms, and illustrated potential remedies under Title VI based on the traditional forms of relief granted for breach of contract. *Id.* at 186-88. The Court concluded that punitive damages, unlike compensatory damages and injunction, are generally unavailable for breach of contract claims. *Id.* at 188. It reasoned that no recipient of federal funds would have consented to immeasurable liability (*i.e.* punitive damages) to a third-party beneficiary (*i.e.* beneficiaries of the services provided by recipient of funds), but only to intentional conduct that would have violated the clear terms of the relevant statute (*i.e.*

---

[16] "The remedies for violations of [Title II] of the ADA and Section 504 of the Rehabilitation Act are *coextensive* with the remedies available in a private cause of action brought under Title VI of the Civil Rights Act of 1964, which prohibits racial discrimination in federally funded programs and activities." *Barnes*, 536 U.S. at 185 (emphasis added).

compensatory damages).  *Id.* at 187.  Thus, the Court held that private parties may not seek punitive damages against public entities under Title II of the ADA and Section 504.  *Id.*

Therefore, plaintiffs' prayer for punitive damages for claims 1-4, 6 and 8 should be stricken.

### II. Plaintiffs may not seek punitive damages for the alleged breach of the common law implied warrant of habitability and covenant of quiet enjoyment.

If Claim 12 is not dismissed, we ask that the prayer for punitive damages be struck.  The common law right of quiet enjoyment and warranty of habitability are derived from the lease between the tenant and the landlord.  *Sobelsohn*, 926 A.2d at 715.  Leases are interpreted and construed like any other contract.  it is a well-established contract fundamental that punitive damages are not available for breach of contract claims.  *Id.*; *see also Barnes*, 536 U.S. at 189; *compare Bernstein v. Fernandez*, 649 A.2d 1064, 1073 (D.C. 1991) (holding that punitive damages will not lie for breach of contract, even if it is proven that the breach is willful, wanton, or malicious, unless the alleged breach of contract "merges with, and assumes the character of a willful tort"), *with Butera v. District of Columbia*, 235 F.3d 637, 657 (D.C. Cir. 2001) (stating that punitive damages are only available, with rare exceptions, against individuals for intentional torts, and warranted only when "the defendant commits a tortious act accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's right, or other circumstances tending to aggravate the injury").  The Arthurs have not alleged a tortious action that "merges with" or "assumes the character of a willful tort" with their claim against DCHA and CIH for the violation of the common law right of warrant of habitability and quiet enjoyment.  Therefore, the Arthurs cannot recover punitive damages for a purely breach of contract claim, such as the violation of the common law right of quiet enjoyment or warranty of habitability.

## V. CONCLUSION

For the reasons stated above, DCHA and CIH respectfully request that Plaintiffs' claims against CIH and DCHA be dismissed with prejudice.  Should any Rehabilitation Act for ADA claims survive, punitive damages for claims 1-4, 6 and 8 should be stricken.

Dated: June 14, 2019                                    Respectfully submitted,

      \_\_\_\_\_/s/_____
Frederick A. Douglas, DC Bar 197897
Tiffany L. Greaves, DC Bar 1048912
Tram T. Pham, DC Bar No. 1034963
**DOUGLAS & BOYKIN PLLC**
1850 M Street NW, Ste. 640
Washington, DC 20036
202.776.0370
202.776.0975 (fax)
fadouglas@douglasboykin.com
tgreaves@douglasboykin.com
tpham@douglasboykin.com
*Attorneys for District of Columbia Housing Authority and CIH Properties, Inc.*

**THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| Evelyn Arthur, *et al.*, | |
| *Plaintiffs,* | |
| v. | Case No. 1:18-cv-2037 (DLF) |
| District of Columbia Housing Authority, *et al.*, | |
| *Defendants.* | |

**PROPOSED ORDER**

Upon consideration of the Motion to Dismiss and Strike, any Opposition thereto, and the entire record herein, it is on this ___ day of _____, 2019, hereby

**ORDERED** that the Motion to Dismiss be and hereby is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' claims against CIH and DCHA are dismissed with prejudice. It is

**SO ORDERED.**


_____
HON. DABNEY L. FRIEDRICH
DISTRICT COURT JUDGE