## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EVELYN ARTHUR, *et al.*,

        *Plaintiffs*,

    v.

DISTRICT OF COLUMBIA
HOUSING AUTHORITY, *et al.*,

        *Defendants.*

Civil Action No. 1:18-cv-02037 (DLF)

## DEFENDANTS DISTRICT OF COLUMBIA, RODNEY ANDERSON, ELDRICK CREAMER, KENNETH DANIELS, WILLIAM LYKE, HARRY SINGLETON, ORLANDO TEEL, AND TAMMY WHITTINGTON'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND FOR SUMMARY JUDGMENT

Defendants District of Columbia (the District), Rodney Anderson, Eldrick Creamer, Kenneth Daniels, William Lyke, Harry Singleton, Orlando Teel, and Tammy Whittington, (collectively "District Defendants"), through counsel, respectfully move pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56(b) to dismiss Plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted and for summary judgment.

Specifically, the District seeks dismissal or, in the alternative, summary judgment of Claim 5 (Plaintiff Evelyn Arthur's failure to accommodate claim in violation of Title II of the ADA, 42 U.S.C. §12132 ); Claim 7 (Plaintiff Evelyn Arthur's discrimination claim in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794) and Claim 17 (Plaintiff Evelyn Arthur's failure to implement policy and failure to train claim pursuant to 42 U.S.C. § 1983). Defendants Rodney Anderson, Eldrick Creamer, Kenneth Daniels, William Lyke, Harry Singleton, Orlando Teel, and Tammy Whittington seek summary judgment as to Claims 9 and 10 (Plaintiffs Evelyn and Robert Arthur's Fourth Amendment excessive force claims).  All District

Defendants seek summary judgment as to Claims 13 and 14 (Plaintiffs Evelyn and Robert Arthur's claim for assault and battery).[1]

A memorandum of points and authorities, a statement of undisputed material facts, and proposed alternative orders are attached for the Court's consideration.

Date: June 14, 2019

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Acting Deputy Attorney General
Civil Litigation Division

/s/ Alicia M. Cullen
ALICIA M. CULLEN [1015227]
Chief, Civil Litigation Division Section III

/s/ Michelle G. Hersh
ROBERT A. DEBERARDINIS, JR. [335976]
MICHELLE G. HERSH [980097]
Assistant Attorneys General
441 4th Street, NW, Suite 630 South
Washington, D.C. 20001
Phone:  202-724-6642; 202-807-0360
Fax:  202-741-8895; 202-741-8982
E-mail: robert.deberardinis@dc.gov;
michelle.hersh@dc.gov

*Counsel for Defendants District of Columbia, Rodney Anderson, Eldrick Creamer, Kenneth Lyke, Harry Singleton, Orlando Teel, and Tammy Whittington*

---

[1] The remaining claims in the Amended Complaint are brought against other defendants.

2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EVELYN ARTHUR, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 1:18-cv-02037 (DLF) |
| DISTRICT OF COLUMBIA HOUSING AUTHORITY, *et al.*, | |
| *Defendants*. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS DISTRICT OF COLUMBIA, RODNEY ANDERSON, ELDRICK CREAMER, KENNETH DANIELS, WILLIAM LYKE, HARRY SINGLETON, ORLANDO TEEL, AND TAMMY WHITTINGTON'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND FOR SUMMARY JUDGMENT**

Defendants District of Columbia (the District), Rodney Anderson, Eldrick Creamer, Kenneth Daniels, William Lyke, Harry Singleton, Orlando Teel, and Tammy Whittington, (collectively "District Defendants"), through counsel, submit the following memorandum of points and authorities in support of their Motion to Dismiss Plaintiffs' Amended Compliant and for Summary Judgment.

**BACKGROUND**

As to the District Defendants, Plaintiffs Evelyn Arthur ("Evelyn") and Robert Arthur ("Robert") allege the following in their Amended Complaint:  On August 30, 2017, officers of the Metropolitan Police Department (MPD), including Defendants Rodney Anderson, Eldrick Creamer, Kenneth Daniels, William Lyke, Harry Singleton, Orlando Teel, and Tammy Whittington, arrived at Evelyn's apartment with an arrest warrant for her son, Robert.  Amend. Compl. [32] ¶ 64.  The officers did not bring an American Sign Language (ASL) interpreter with

1

them, although Plaintiffs claim they knew or should have known that Evelyn was deaf. *Id.* ¶ 65. Upon entering the apartment, Plaintiffs claim it was clear to the officers that Evelyn was deaf, yet they were indifferent to her disability in that they did not allow her son, Robert, to explain to his mother what was occurring (*i.e.,* the police had a warrant for his arrest and were about to take him into custody). *Id.* ¶¶ 71-76.

Plaintiffs allege that although Robert continued to tell the officers he needed to communicate with his mother, they ignored his requests. *Id.* Instead, they restrained Evelyn by holding her wrists and arms. *Id.* ¶ 77. Plaintiffs claim the officers then forcibly took Robert into the bedroom, assaulted him, and then removed him from the apartment after shackling and handcuffing him. *Id.* ¶ 76. After Robert was removed to the bedroom, Evelyn was placed in handcuffs behind her back and forced to sit on a couch for several minutes, although she apparently posed no threat to the police. *Id.* ¶ 77. After the officers took her son from the apartment, Evelyn's handcuffs were removed, and she was taken by ambulance to the hospital because she complained of injuries to her arms and wrists. *Id.* ¶ 79.

Based upon these allegations, Plaintiff Evelyn Arthur claims that the District of Columbia violated her rights under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 (Claim 5) and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (Claim 7). She further brings a claim against the District pursuant to 42 U.S.C. § 1983 for "failure to implement policy and failure to train" (Claim 17). Moreover, Evelyn and Robert Arthur claim that Defendants Rodney Anderson, Eldrick Creamer, Kenneth Daniels, William Lyke, Harry Singleton, Orlando Teel, and Tammy Whittington violated their Fourth Amendment rights by using excessive force against them (Claims 9 and 10). Finally, Evelyn and Robert Arthur claim

that all District Defendants are liable for assault and battery (Claims 13 and 14).[2]  As

demonstrated below, the Title II (Claim 5), Section 504 (Claim 5) and Section 1983 (Claim 17)

claims should be dismissed, or in the alternative the Court should grant summary judgment, and

the Court should grant summary judgment as to the Fourth Amendment (Claims 9 and 10) and

assault and battery (Claims 13 and 14) claims.

## LEGAL STANDARD

### I.   <u>Motion to Dismiss</u>

To survive a motion to dismiss, a plaintiff's "[f]actual allegations must be enough to raise

a right to relief above the speculative level, on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555

(2007).  The Supreme Court has set forth a "two-pronged approach" that a trial court should

utilize when ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).  While a trial court generally must accept a plaintiff's factual

allegations as true, it should first "identify pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations."  *Id.*  Thus, the basic

pleading standards "demand more than an unadorned, the-defendant-unlawfully-harmed-me

accusation."  *Id.*  (citing *Twombly*, 550 U.S. at 555).

Once the court has determined that the plaintiff has asserted "well-pleaded factual

allegations," it "should assume their veracity and then determine whether they plausibly give rise

to an entitlement to relief."  *Id.*  The Court defined "plausible" as follows:

> A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference that

---

[2] The remaining claims in the Amended Complaint are brought against other defendants, not any District defendant.

> the defendant is liable for the misconduct alleged.  The plausibility
> standard is not akin to a "probability requirement," but it asks for
> more than a sheer possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are merely consistent with a
> defendant's liability, it stops short of the line between possibility
> and plausibility of entitlement to relief.

*Id.; see also Atherton v. District of Columbia*, 567 F.3d 672, 681 (D.C. Cir. 2009).  In other words, a plaintiff's factual allegations must allow a court to draw a reasonable inference that the defendant is liable for the misconduct alleged, if the factual allegations are proven true.  *See Matrixx Industries, Inc. v. Siracusano*, 563 U.S. 27, 45-46 (2011).

## II.    <u>Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "[s]hall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the initial burden of identifying evidence that demonstrates that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once a movant has made this initial showing, the burden shifts to the opposing party to "come forward with specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).  In other words, "once the movant has supported a summary judgment motion by evidence of particular events, the court may properly look to the nonmovant for rebuttal evidence either 'from persons familiar with the events,'" or require "the nonmovant to 'otherwise cast more than metaphysical doubt on the credibility of the testimony.'"  *Doe v. Gates*, 981 F.2d 1316, 1323 (D.C. Cir. 1993) (quoting *Bias v. Advance Int'l, Inc.*, 905 F.2d 1558, 1561 (D.C. Cir. 1990)).  A trial court should enter

summary judgment against a nonmoving party who fails to make a showing sufficient to establish the existence of an element essential to his case, and on which the party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

A party may move "for summary judgment *at any time*" including at the beginning of a case before discovery has commenced. Fed. R. Civ. P. 56(c) (Emphasis added); *see also Parker v. Hoglander*, No. CV 15-926 (JDB), 2016 WL 3527014, at *3 (D.D.C. June 23, 2016).

## ARGUMENT

**A.**  **The Court Should Dismiss Plaintiff Evelyn Arthur's ADA, Rehabilitation Act, and Section 1983 Claims (Claims 5, 7, 17) or, Alternatively, Grant the District Judgment as a Matter of Law.**

The ADA and Rehabilitation Act forbid discrimination based on disability. Plaintiffs claim that the District discriminated against Evelyn during the encounter when the officers failed to provide her two accommodations. First, Plaintiffs claim that the MPD officers knew or should have known that Evelyn was deaf and therefore should have brought an ASL interpreter with them when they were effectuating an arrest warrant on her son, Robert. Amend. Compl. ¶ 126. Second, Plaintiffs claim that the MPD officers needed to wait a reasonable amount of time before handcuffing Robert so that he could explain to Evelyn what was happening. *Id.* ¶ 127.

Plaintiffs claims are flawed for multiple reasons. The purpose of the ADA and the Rehabilitation Act is to secure for disabled persons the same rights and privileges afforded to able-bodied persons. Bystanders to an arrest, whether impaired or not, are not entitled to services from the District. Moreover, compensatory damages are not available under the ADA or the Rehabilitation Act absent a showing of discriminatory intent. Finally, Plaintiff Evelyn Arthur, as a matter of law, cannot bring a claim pursuant to 42 U.S.C. § 1983 for the vindication of rights under the ADA and Rehabilitation Act.

5

A.  **Plaintiff Evelyn Arthur Was Not Denied Public Services or Benefits Owed to Her or Otherwise Discriminated Against Based on Her Disability.**

Plaintiff Evelyn Arthur alleges that the District failed to make a reasonable accommodation for her disability in violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12181 *et seq.*, as a result of the actions of the officers who (1) failed to bring an ASL interpreter with them when they went to her apartment to execute an arrest warrant for her son, Robert; and (2) refused to allow Robert reasonable time before handcuffing him to explain to her, in sign language, what was happening.  Amend. Compl. ¶¶ 126, 127.  Evelyn makes identical claims against the District pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  *Id.* ¶ 140.

As an initial matter, the requirements of Title II of the ADA, and Section 504 of the Rehabilitation Act, are the same.  Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."  29 U.S.C. § 794(a).

Thus, to plead a claim of discrimination under Title II of the ADA, or under § 504 of the Rehabilitation Act, a plaintiff must allege (1) that he is a "qualified individual with a disability;" (2) who "was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;"

6

and (3) that "such exclusion, denial of benefits, or discrimination was by reason of his

disability." *Waller ex rel. Estate of Hunt v. City of Danville*, 556 F.3d 171, 175 (4th Cir. 2009);

*Sacchetti v. Gallaudet University*, 344 F. Supp. 3d 233, 269-70 (D.D.C. 2018); *Lee v.*

*Corrections Corporation of America/Correctional Treatment Facility*, 61 F. Supp. 3d 139, 143

(D.D.C. 2014).  Even assuming *arguendo* that Evelyn is a qualified individual with a disability

(*i.e.*, deafness), under the circumstances of this case, she was not denied the benefits of public

services, programs, or activities, nor otherwise discriminated against on the basis of her

disability.

Here, the MPD officers were executing a warrant for the arrest of Robert.  In arrest cases,

courts have acknowledged two theories of ADA liability: 1) where the police wrongfully arrest

someone with a disability because they misperceive the effects of that disability as criminal

activity; and 2) where the police fail reasonably to accommodate a person's disability during the

investigation or arrest, causing the person to suffer greater injury than otherwise would occur.

*See, e.g., Williams v. City of New York,* 121 F. Supp. 3d 354 (S.D.N.Y. 2015).  Nevertheless, this

line of cases appears inapplicable to Plaintiff Evelyn's case in that it was Robert, not Evelyn,

who was the arrestee.

Evelyn was a bystander to the arrest of her son, and therefore her entitlement to services

should be analyzed within the framework of the rights of a bystander or witness to an arrest as

opposed to the rights of a suspect or arrestee.  After all, the purpose of the ADA and the

Rehabilitation Act is to secure for disabled persons the same rights and privileges afforded to

able-bodied persons.  *See Pierce v. District of Columbia,* 128 F. Supp. 3d 250, 265 (D.D.C.

2015), citing Robert L. Burgdorf Jr., *The Americans with Disabilities Act: Analysis and*

*Implications of A Second–Generation Civil Rights Statute,* 26 Harv. C.R.-C.L. L.Rev. 413, 426

(1991); *see also Henrietta D. v. Bloomberg*, 331 F.3d 261, 274 (2d Cir. 2003) (indicating that the ADA "help[s] individuals with disabilities access public benefits to which both they and those without disabilities *are legally entitled*, and to which they would have difficulty obtaining access due to disabilities" (emphasis added)).  Thus, the ADA analysis in this case should be framed as to whether Evelyn, as a deaf eyewitness to the arrest of her son, was entitled to these accommodations.  The answer to this question is no.

Although the case law may have established that the protections of ADA are applicable to suspects and arrestees, the District could not find any case law for the proposition that bystanders to an arrest, whether impaired or not, have an entitlement to services from the District.  Notably, Evelyn complains that watching the police use excessive force on her son, and being restrained and prevented from communicating with him, caused her extreme emotional distress along with physical and emotional injury as a result of being restrained and handcuffed.  Amend. Compl. ¶¶ 78, 79.  These alleged injuries are not related to her impairment and therefore are not relevant to her failure to accommodate claims.

Video footage of the incident (attached as Exhibits 1 and 2) was captured via the body worn cameras from the MPD officers who effectuated the arrest of Robert on August 30, 2017.  *See* Declaration of Harry Singleton, attached as Exhibit 3.  Although the video clearly demonstrates that the officers did not use excessive force on her son, even if they had, that would be irrelevant to Evelyn's ADA and Rehabilitation Act claims.  To state the obvious, Evelyn became upset after seeing the force, which has nothing to do with her hearing.  More importantly, the District is unaware of any case law that requires police officers to permit arrestees to communicate with family members or other bystanders before, during, or after an

arrest.  Consequently, as to communication with her son, Evelyn sustained no different treatment than if she was not hearing impaired.

Plaintiffs' suggestion that the officer should have delayed handcuffing Robert is also meritless because exigent circumstances rendered any such accommodation to Evelyn unreasonable as a matter of law.  The officers spent *over ten minutes* outside the door to the apartment attempting to convince Robert to cooperate with them.  Exhibit 1: 1:34 to 11:55.  During that time, he made it clear that he was not going to cooperate with the officers by refusing to answer the door during the entire period, holding the lock to prevent the officers from using the key (Ex. 1: 8:00), and cursing at the officers (Ex. 1: 11:00).  Given that Robert made it abundantly clear that he was not willing to cooperate with the police, he created exigent circumstances requiring the police to take control of him as soon as possible, thereby excusing any communication between mother and son, even should the Court find that such communication was necessary under the ADA.  *Cf. Bahl v. County of Ramsey*, 695 F.3d 778 (8th Cir. 2012) (exigent circumstances excuse providing ADA accommodation to arrestee).

Furthermore, Plaintiffs have not claimed that handcuffing Evelyn was disability discrimination, and any such claim would be meritless.  As indicated by the video, it should have been clear to Evelyn what was happening, namely that uniformed police officers had entered the apartment and were handcuffing her son (*i.e.*, her son was being arrested).  Ex. 1: 11:55 -12:20.  At this point, she chose to interfere with the arrest by grabbing an officer and attempting to bite him.  Ex. 1: 12:42-12:48.  Whether an individual is deaf or hearing, he or she has no right to interfere with an arrest.  *See* D.C. Code § 22-405(b) ("Whoever without justifiable and excusable cause assaults a law enforcement officer on account of, or while that law enforcement officer is engaged in the performance of his or her official duties shall be guilty of a misdemeanor.")

Rather than arrest Evelyn for assault upon a police officer, the officers merely restrained her and placed her in handcuffs for no longer than necessary for their protection.  Ex. 1: 12:40-16:30. Consequently, the District is entitled to dismissal or summary judgment as to Evelyn's ADA and Rehabilitation Act claims.

      **B.**      **Alternatively, the District is Entitled to Judgment Because Plaintiff Evelyn Arthur is Not Entitled to Damages.**

Even if the Court believes there was a possible ADA or Rehabilitation Act violation, summary judgment is still proper because Evelyn cannot recover monetary damages. Compensatory damages are not available under the ADA or the Rehabilitation Act absent a showing of discriminatory intent.  *See Updike v. Multnomah County*, 870 F.3d 939, 951-52 (9th Cir. 2017).  To show intentional discrimination, a plaintiff must show that a defendant acted with "deliberate indifference."  *Pierce v. District of Columbia,* 128 F. Supp. 3d 250, 278-79 (D.D.C. 2015) (collecting cases from other circuits).  As stated in *Pierce*:

> deliberate indifference is "knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood."  The "knowledge" element is satisfied where the public entity has notice of the plaintiff's accommodation needs, and the "failure to act" element is satisfied by conduct that is "more than negligent and involves an element of deliberateness."

*Id.* (internal citation omitted) (quoting *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001)).

Thus, to show deliberate indifference for an ADA or Rehabilitation Act claim, Evelyn cannot rely merely upon the alleged conduct of the police officers.  The concept of deliberate indifference here is akin to the deliberate indifference standard for municipal liability in a Section 1983 claim.  *See Loeffler v. Staten Island Hosp*. 582 F.3d 268, 275 (2d Cir. 2009).  Thus, "intentional discrimination may be inferred when a policymaker acted with at least deliberate

indifference to the strong likelihood that a violation of federally protected rights will result from

the implementation of the challenged policy or custom." *Id.* (citations and internal quotations

omitted); *see also Meagley v. City of Little Rock*, 639 F.3d 384, 389 (8th Cir. 2011).

Here, as to Evelyn's ADA and Rehabilitation Act claims (Claims 5 and 7), although she

alleges that the "District of Columbia" was deliberately indifferent to her rights, she merely

describes the conduct of the MPD officers during the incident as follows:

> Defendant District of Columbia further failed to provide a
> reasonable accommodation for Evelyn Arthur's disability on August
> 30, 2017, when it refused to allow Robert Arthur a reasonable time
> before handcuffing him to explain to her, in sign language, what was
> happening when the MPD Officers entered her apartment.

Amend. Compl. ¶ 127.

This allegation clearly relates to the conduct of the defendant police officers as opposed

to the knowledge of policymakers and any subsequent failure to act.  Thus, it is clear that Evelyn

improperly seeks to hold the District liable for her ADA and Rehabilitation Act claims based

upon *respondeat superior* liability for the actions of the police officers as opposed to the

necessary showing of deliberate indifference on the part of policymakers.  *See S.H. ex rel.*

*Durrell v. Lower Merion School Dist.,* 729 F.3d 248, 265-66 (3d Cir. 2013) (no ADA liability

where no evidence that school district was aware of psychologist misdiagnosis of student).

Accordingly, Evelyn has failed to plead sufficient facts to establish plausible entitlement to relief

under *Iqbal* and the Court should dismiss these claims.

Moreover, should the Court find that the conduct of the officers can be imputed to the

District, Plaintiff's Amended Complaint fails because deliberate indifference cannot be imputed

to the officers.  On the day in question, the officers had an arrest warrant for Robert, who is not

deaf.  As their mission was his arrest, it is untenable to suggest that they would have knowledge

that the ADA rights of a bystander to the arrest would likely be violated if they did not bring an interpreter with them.  It could not be anticipated that there would be any requirement for interaction with a deaf bystander.  The officers' failure to anticipate that Robert would not cooperate with their entreaties for him to open the door and leave of his own accord may arguably be deemed negligence.  Negligent conduct, however, does not trigger ADA or Rehabilitation Act liability.  *See Updike,* 870 F.3d at 951-52.  As a result, the District is entitled to dismissal, or judgment as a matter of law as to Evelyn's ADA and Rehabilitation Act (Claims 5 and 7) claims.

### C.     **The Court Should Dismiss Plaintiff Evelyn Arthur's Section 1983 Claim.**

In support of her Section 1983 claim against the District, Evelyn alleges that:

> Defendant District of Columbia is liable to Plaintiff Evelyn Arthur
> for the damages caused by its failure to implement a policy,
> custom, or practice that reasonably accommodated her disability,
> and by its failure to train its police officers to provide reasonable
> accommodations in such circumstances

Amend. Compl. ¶ 173.

In other words, Evelyn predicates her Section 1983 claim upon alleged violations of the ADA and the Rehabilitation Act.  This is not something she can do as a matter of law.  An alleged violation of federal law may not be vindicated under Section 1983 where: "(1) the statute does not create an enforceable right, privilege, or immunity, or (2) Congress has foreclosed citizen enforcement in the enactment itself, either explicitly, or implicitly by imbuing it with its own comprehensive remedial scheme."  *Vinson v. Thomas*, 288 F.3d 1145, 1155 (9th Cir. 2002).  Because the ADA is a statutory scheme containing comprehensive remedial measures, most courts that have addressed the issue hold that a plaintiff must sue under the ADA and Rehabilitation Act directly and may not utilize the more generalized remedial provisions of

Section 1983.  *Id., See also Karam v. University of Arizona*, 2019 WL 588151, *4 (D. Ariz. Feb.

13, 2019); *Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922 (8th Cir. 2016); *Eskenazi-*

*McGibney v. Connetquot Central School Dist.*, 84 F. Supp. 3d 221 (E.D. N.Y. 2015) (equal

protection claim); *Vicenty-Martell v. Estado Libre Asociado de Puerto Rico*, 48 F. Supp. 2d 81

(D.P.R. 1999); *Pena v. Bexar Cnty., Texas,* 726 F. Supp. 2d 675 (W.D. Tex. 2010); *Quidachay v.*

*Dep't of Corrections*, 51 Kan. App. 2d 278, 345 P.3d 290 (2015).

      Evelyn's Section 1983 claim should therefore be dismissed for failure to state a claim

upon which relief can be granted.  In the alternative, even if permitted to bring a Section 1983

claim based upon the violation of rights under the ADA and Rehabilitation Act, Evelyn has

failed to allege sufficient facts in the Amended Complaint to plausibly entitle her to relief.

      To state a claim under Section 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States and must show that the alleged

deprivation was committed by a person acting under color of state law.  *West v. Atkins,* 487 U.S.

42, 48 (1988).  In limited circumstances, the District of Columbia can constitute a "person" for

purposes of § 1983.  *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658 (1978);

*Best v. District of Columbia,* 743 F.Supp. 44, 46 (D.D.C.1990).  "[A] municipality can be found

liable under § 1983 only where the municipality itself causes the constitutional violation at

issue."  *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989) (citing *Monell,* 436 U.S. at

694-95).  Thus, "*respondeat superior* or vicarious liability will not attach under Section 1983."

*Id.*  As a result, a municipality cannot be sued under Section 1983 simply because one of its

employees or agents violated a plaintiff's rights.  *Id.*  More is required.

      In the seminal case of *Monell*, the Court held that:

> [A] local government may not be sued under § 1983 for an injury
> inflicted solely by its employees or agents.  Instead, it is when

> execution of a government's policy or custom, whether made by its
> lawmakers or by those whose edicts or acts may fairly be said to
> represent official policy, inflicts the injury that the government as
> an entity is responsible under § 1983.

*Id.* at 691–92.

While the Court in *Monell* did not utilize the term deliberate indifference, it recognized

that constitutional liability by a municipality springs from a custom that is constitutionally

infirm.  The Court specifically noted that:

> "Congress included customs and usages [in § 1983] because of the
> *persistent and widespread discriminatory practices* of state officials
> . . . . Although not authorized by written law, such practices of state
> officials could well be so permanent and well settled as to constitute
> a 'custom or usage' with the force of law."

*Id., quoting Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 167–168 (1970) (emphasis added).

In later cases, the Supreme Court required plaintiffs to show that the policy in question

was enacted or maintained with "deliberate indifference" to an almost inevitable constitutional

injury.  *See Board of Cnty. Com'rs of Bryan Cny. v. Brown ,* 520 U.S. 397, 403 (1997); *see also*

*City of Canton v. Harris,* 489 U.S. 378, 389 (1989).  The Supreme Court ultimately articulated

that a custom or policy of deliberate indifference could be proven in *three* ways.  "Official

municipal policy includes the decisions of a government's lawmakers, the acts of its

policymaking officials, and practices so persistent and widespread as to practically have the force

of law."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Here, Evelyn's allegations fall far short of this standard.  She does not allege an explicit

setting of a policy by the government that violates the Constitution.  Further, Plaintiff does not

allege an act of unconstitutional conduct on the part of a policymaker of the District of

Columbia.

Evelyn, in conclusory terms, alleges deliberate indifference by the District to accommodate the needs of deaf individuals, such as her, by its failure to create a policy by which police officers would be trained in accommodating the needs of deaf individuals. Amend. Compl. ¶ 172.  Her allegations, however, are insufficient to survive a motion to dismiss.  Plaintiff's conclusory allegations that police officers lack sufficient training, without more, are insufficient to demonstrate plausible entitlement to relief as to a Section 1983 claim against the District.  *E.g., Bell v. District of Columbia*, 82, F. Supp. 3d 151, 156-57 (D.D.C. 2015).  Rather, to determine whether a municipality is liable under a theory of "deliberate indifference," courts look to whether the municipality "knew or should have known of the risk of constitutional violations, but did not act."  *Jones v. Horne,* 634 F.3d 588, 601 (D.C. Cir. 2011).

Thus, a pervasive pattern of similar constitutional violations by untrained municipal agents is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.  *Connick v. Thompson*, 563 U.S. 51, 62 (2011); *Carter v. District of Columbia*, 795 F.2d 116, 123 (D.C. Cir. 1986).  The standard for liability for a failure-to-train claim is a stringent one: "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick*, 563 U.S. at 61.

Here, in her Amended Complaint, Evelyn merely alleges that the District has a sizeable deaf population.  Amend. Compl. ¶ 172.  What is lacking is any suggestion that the District had knowledge of a widespread practice by its police officers of violating the ADA rights of deaf individuals; yet the District failed to implement remedial measures.  *See generally id.*

Thus, Plaintiff has failed to establish plausible entitlement to relief, because the Amended Complaint lacks sufficient factual allegations that the District knew or should have known of the alleged violation of ADA rights.  Without such allegations, decisionmakers cannot plausibly be

said to have deliberately chosen a training program that would cause violations of statutory

rights.  *See Connick*, 563 U.S. at 62.  Thus, as to her claim of deliberate indifference against the

District, Plaintiff has presented nothing more than an unadorned, the-defendant-unlawfully-

harmed-me accusation.  *See Twombly*, 550 U.S. at 555.  Consequently, the District is entitled to

dismissal of Evelyn's Section 1983 claim (Claim 17).  *See Singletary v. District of Columbia*,

766 F.3d 66, 73 (D.C. Cir. 2014) (District of Columbia cannot be liable for constitutional

violations where plaintiff fails to demonstrate that a municipal policy was the "moving force"

behind the constitutional violation); *Cherry v. District of Columbia*, 330 F. Supp. 3d 216, 226-

27 (D.D.C. 2018) (complaint dismissed where plaintiff failed to allege facts sufficient to place

District on notice that changes in training regimen were necessary to avoid violation of rights).

## II.    Defendants Rodney Anderson, Eldrick Creamer, Kenneth Daniels, William Lyke, Harry Singleton, Orlando Teel, and Tammy Whittington Are Entitled to Qualified Immunity as to Plaintiffs Evelyn and Robert Arthur's Fourth Amendment Claims (Claims 9 and 10).

It is well settled that police officers, like all public officials, enjoy a qualified immunity

from constitutional and statutory claims against them.  *Saucier v. Katz*, 533 U.S. 194, 200

(2001); *Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002).  All but the "plainly

incompetent or those who knowingly violate the law" are entitled to qualified immunity.  *Malley

v. Briggs*, 475 U.S. 335, 341 (1986).  "An official sued under § 1983 is entitled to qualified

immunity unless it is shown that the official violated a statutory or constitutional right that was

clearly established at the time of the challenged conduct."  *Plumhoff v. Rickard*, 134 S. Ct. 2012,

2023 (2014) (quotations and citation omitted).  This requires a two-pronged analysis.  "To defeat

a defense of qualified immunity, a plaintiff must show not only [1] that an official 'violated a

constitutional right,' but [2] also that 'the right was clearly established' at the time of the

violation."  *Fenwick v. Pudimott*, 778 F.3d 133, 137 (D.C. Cir. 2015) (quoting *Saucier v. Katz*,

533 U.S. 194, 200-01 (2001)).  The trial court has the discretion to decide which of the two prongs to tackle first.  *Id*.

Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).  As a result, the Supreme Court has "repeatedly… stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (*per curiam*); *see also James v. United States*, 48 F. Supp. 3d 58, 66 (D.D.C. 2014) (holding officer entitled to qualified immunity based upon allegations of the complaint).

Here, video footage of the incident reveals that the officers did not violate the Fourth Amendment rights of Evelyn or Robert Arthur.  *See* Exhibits 1 and 2.  As a preliminary matter, because the video clearly depicts the actions of the officers as to their use of force, the Court should reach the merits of Defendants' summary judgment motion based upon its review of that video.  *See Scott v. Harris*, 550 U.S. 372, 374-79 (2007).  In *Scott,* a deputy sheriff utilized a maneuver to stop a fleeing vehicle that caused it to crash and injure the driver, who then filed a Section 1983 lawsuit against the deputy alleging the use of excessive force in violation of the Fourth Amendment.  550 U.S. at 374-75.  The deputy moved for summary judgment based on qualified immunity, but the trial court held that there was a dispute as to the facts of the incident which required submission to a jury.  *Id*. at 376.  The Eleventh Circuit affirmed because it found that the plaintiff's view of the facts, if believed, could demonstrate excessive force.  *Id.*  The Supreme Court reversed and held that the deputy was entitled to qualified immunity.  *Id.*

In reaching its decision, the Court noted that in the usual case where the litigants' version of the facts differs substantially, summary judgment is inappropriate.  *Id*. at 378.  Nevertheless,

the Court found that there was an "added wrinkle" in *Scott*: namely, a video that fully captured the events in question. *Id.* The Court reviewed the video and found that it contradicted the plaintiff's version of the facts. *Id.* at 379. The Court held that based on what the video showed, no reasonable juror could believe the plaintiff's version of the facts, and therefore the appellate court "should have viewed the facts in the light depicted by the videotape," not in the light of the plaintiff's version of the facts. *Id.* at 380-81.

Here, as demonstrated below, the allegations in the Amended Complaint are contradicted by the actual events as captured in the video. Under such circumstances, as in *Scott,* the issue of summary judgment should be viewed considering the facts of the case as revealed by the video. Because the video in question demonstrates that the force exercised by the officers was reasonable under the circumstances that confronted them, they are entitled to qualified immunity.

A police officer cannot be liable for excessive force in violation of the Fourth Amendment if his actions were objectively reasonable in light of the facts and circumstances confronting them. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him). The reasonableness of the officer's conduct is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* Courts necessarily allow for the fact that the police are often forced to make split-second judgments about the amount of force warranted in circumstances that are tense, uncertain, and rapidly evolving. *Id.* at 396-97; *accord Oberwetter v. Hilliard*, 639 F.3d 545, 555 (D.C. Cir. 2011).

As the Supreme Court explained in *Graham*, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."

490 U.S. at 396-97. "An officer's right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect the arrest." *Id.; see also Wardlaw v. Pickett*, 1 F.3d 1297, 1302 (D.C. Cir. 1993) (officers must be free to use the reasonable force necessary to effect an arrest). Thus, "an officer will only be held liable" under the Fourth Amendment "if the force used was so excessive that no reasonable officer could have believed in the lawfulness of his actions." *Hedgepeth v. Rahim,* 893 F.3d 802, 810 (D.C. Cir. 2018); *Rogala v. District of Columbia*, 161 F.3d 44, 54 (D.C. Cir. 1998).

Here, the allegations in the Amended Complaint are contradicted by the actual events that occurred as depicted by the video. Under such circumstances, as in *Scott,* the issue of the defendant officers' entitlement to summary judgment based upon qualified immunity should be viewed in light of the facts revealed by the video.

The video footage demonstrates the following: MPD officers had a warrant for Robert's arrest on August 30, 2017. Statement of Undisputed Material Fact ("SUMF") ¶ 2. They arrived at the apartment to execute the warrant, and knocked and announced their presence. *Id.* ¶ 3. Although MPD officers say a person through the peephole later identified as Robert, he failed to open the door. *Id.* ¶ 4. After obtaining a key and unlocking the door, the officers entered the apartment. *Id.* ¶ 5. After Robert argued with the police officers, they then attempted to place him in handcuffs. *Id.* ¶ 6. In response to the officers' efforts to effectuate the arrest of Robert, Evelyn interfered by grabbing one of the officer's arms. *Id.* ¶ 12. When the officers tried to subdue Evelyn, she attempted to bite one of the officers. *Id.* ¶ 13. The officers gained control of Evelyn, and she was placed in handcuffs and made to sit down on the couch. *Id.* ¶ 14.

In the meantime, other officers were in the process of arresting Robert who continued to argue with the police and refused to cooperate with them. *Id.* ¶¶ 6-8. In an effort to gain control

of Robert, the officers took him into the bedroom and pushed him onto the bed to gain control of him. *Id.* ¶ 7.   The officers struggled with Robert who refused to place his hands behind his back. *Id.* ¶ 8.   The officers finally gained full control of Robert and removed him from the apartment. *Id.* ¶ 11.   Once Robert was out of the apartment, the handcuffs were removed from Evelyn and her movements were no longer restricted.  *Id.* ¶ 15.

The use of force by the officers was clearly reasonable under the circumstances.  They merely placed handcuffs on Evelyn to control her, after she physically interfered with the arrest of her son, and even attempted to bite one of the officers.  The use of the handcuffs was no longer than necessary to prevent Evelyn from interfering with the arrest, as they were removed immediately upon Robert's exit from the apartment.  Consequently, Defendants Anderson, Creamer, Lyke, Singleton, Teel, and Whittington are entitled to qualified immunity as to Evelyn's Fourth Amendment claim and the Court should grant them summary judgment.  *See Los Angeles County v. Rettele,* 550 U.S. 609, 614 (2007) (in executing a warrant, officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search, including use of handcuffs for a period no longer than necessary).

As to Robert, he made it abundantly clear to the officers that he was not going to cooperate with them.  He refused to open the door for several minutes; he cursed at the officers, and refused to place his hands behind his back once the officers were inside the apartment. Rather than slam him to the floor to gain control of him, the officers reasonably took the opportunity to utilize the bed as a landing place for Robert, thereby minimizing the potential for injury.

Notably, courts in this jurisdiction have recognized that officers are authorized to gain control of a non-cooperating assailant during the course of an arrest utilizing a variety of tactics

that require some degree of force.  *Rogala v. District of Columbia,* 161 F.3d 44, 54

(D.C.Cir.1999) (concluding that a police officer who grabbed the arrestee by the arm and pulled

her out of the vehicle's passenger seat used a reasonable level of force and therefore committed

no constitutional violation); *Scott v. District of Columbia*, 101 F.3d 748, 759-60 (1997) (officer's

conduct in allegedly "slamming" plaintiff to the ground and "putting their knees on his neck,

back, and lower legs" all "reasonably calculated toward the goal of securing [plaintiff] and

placing him in handcuffs . . .") *., Martin v. Malhoyt,* 830 F.2d 237, 261-62 (D.C. Cir. 1987)

(arresting officer did not use excessive force by allegedly grabbing a driver by the waist,

throwing him back into the driver's seat and slamming the door on his legs); *Robinson v. District*

*of Columbia*, 2006 WL 2714913, at *4 (D.D.C. Sept. 22, 2006) (qualified immunity protects a

police officer who "pushed plaintiff and shoved him onto the hood of his car, and held [him]

down while putting the handcuffs on [his] wrists ... tightly enough to cause swelling and

abrasions, but [causing] no ongoing or permanent injury"); *Gee v. District of Columbia,* 2005

WL 3276272, at *3 (D.D.C. Aug. 22, 2005) (qualified immunity protects a police officer who

"took [the plaintiff's] right arm, and twisted it behind [his] back" while another officer "took

[his] hand and forcible [sic] bent [his] neck forward causing injuries" to his back, neck, penis,

arm and head).  As a result, Defendants Anderson, Creamer, Lyke, Singleton, Teel, and

Whittington are entitled to qualified immunity as to Robert's Fourth Amendment claim and the

Court should grant them summary judgment.

     Considering these cases, it cannot be said that the force used in effectuating Robert's

arrest was so excessive that no reasonable officer could have believed in the lawfulness of their

actions.  Consequently, the MPD officers are entitled to qualified immunity as to Plaintiffs'

Fourth Amendment claims.  *See Hedgepeth v. Rahim,* 893 F.3d 802, 810 (D.C. Cir. 2018);

*Rogala v. District of Columbia*, 161 F.3d 44, 54 (D.C. Cir. 1998).

### III.   Plaintiff Evelyn and Robert Arthur's Assault and Battery Claims (Claims 13 and 14) Fail Because the Officers Are Entitled to Qualified Privilege.

"An assault is an intentional act and unlawful attempt or threat, either by words or by

acts, to do physical harm to the victim," while "[a] battery is an intentional act that causes a

harmful or offensive bodily contact."  *Evans–Reid v. District of Columbia,* 930 A.2d 930, 937

(D.C. 2007).  The unreasonable use of force by a police officer may be an assault and battery

under District of Columbia law.  *Hundley v. District of Columbia,* 494 F.3d at 1101, but "[a]

police officer has a qualified privilege to use reasonable force to effect an arrest, provided that

the means employed are not in excess of those which the [officer] reasonably believes to be

necessary."  *Scales v. District of Columbia,* 973 A.2d 722, 730 (D.C. 2009).  Here, as discussed

above, in the context of Plaintiffs' Fourth Amendment claims, the MPD officers did not utilize

unreasonable force when responding to Evelyn's interference with her son's arrest, and his lack

of cooperation and resistance.  As a result, given that the officers did not use excessive force, the

District Defendants are entitled to summary judgment as to Evelyn and Robert's assault and

battery claims.  *See Rogala v. District of Columbia,* 161 F.3d 44, 57(D.C. Cir. 1998); *see also*

*Armbruster v. Frost*, 962 F. Supp. 2d 105, 116-17 (D.D.C. 2013); *cf. Mazloum v. District of*

*Columbia Metro. Police Dep't,* 576 F. Supp. 2d 25, 42 (D.D.C. 2008) (a finding against an

officer on a claim of excessive use of force in violation of the Fourth Amendment was

inconsistent with a finding in his favor on a common law battery claim).

### CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint

against the District Defendants or, alternatively, grant them summary judgment.

Date: June 14, 2019                         Respectfully submitted,

                                            KARL A. RACINE
                                            Attorney General for the District of Columbia

                                            CHAD COPELAND
                                            Acting Deputy Attorney General
                                            Civil Litigation Division

                                            /s/ Alicia M. Cullen
                                            ALICIA M. CULLEN [1015227]
                                            Chief, Civil Litigation Division Section III

                                            /s/ Michelle G. Hersh
                                            ROBERT A. DEBERARDINIS, JR. [335976]
                                            MICHELLE G. HERSH [980097]
                                            Assistant Attorneys General
                                            441 4th Street, NW, Suite 630 South
                                            Washington, D.C. 20001
                                            Phone:  202-724-6642; 202-807-0360
                                            Fax:  202-741-8895; 202-741-8982
                                            E-mail: robert.deberardinis@dc.gov ;
                                            michelle.hersh@dc.gov

                                            *Counsel for Defendants District of Columbia,
                                            Rodney Anderson, Eldrick Creamer, Kenneth Lyke,
                                            Harry Singleton, Orlando Teel, and Tammy
                                            Whittington*

23