UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EVELYN ARTHUR, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DISTRICT OF COLUMBIA HOUSING AUTHORITY, *et al.*,<br><br>*Defendants.* | No. 18-cv-2037 (DLF) |

## MEMORANDUM OPINION AND ORDER

Evelyn Arthur and her son Robert Arthur initially brought this action against the District of Columbia Housing Authority (DCHA), CIH Properties, Inc. (CIH), the District of Columbia (D.C.), and seven individual Metropolitan Police Department (MPD) officers, alleging eighteen counts. *See* First Am. Compl. (Complaint or Compl.) ¶¶ 86–177, Dkt. 32. The Court previously granted in part DCHA and CIH's Motion to Dismiss. *See* April 11, 2020 Mem. Op., Dkt. 57. The plaintiffs now request that the Court reconsider its dismissal of Claim 12, Ms. Arthur's common law implied warranty of habitability and right of quiet enjoyment claims against DCHA and CIH. *See* Pls.' Mot. to Reconsider at 1, Dkt. 59; April 11, 2020 Mem. Op. at 14–15, Dkt. 57. For the reasons that follow, the Court will deny the motion to reconsider.

**I. BACKGROUND[1]**

Evelyn Arthur is a deaf 78-year-old resident of Claridge Towers, a facility owned by the District. Compl. ¶¶ 9–10. DCHA operates public housing programs within the District, and CIH

---

[1] This section includes only those facts that are relevant to the motion before the Court. A more extensive discussion of the facts is set forth in the Court's initial opinion. *See* Mem. Op. at 1–9.

is a Maryland corporation that manages Claridge Towers. *Id*. ¶¶ 11–12. According to the plaintiffs, DCHA has a "phone call policy" for visitors to its properties. *Id*. ¶ 17. Under this policy, a visitor "must present identification to the security officer on duty. The security officer records the visitor's name in a log book and then calls the resident to confirm that the resident is at home and wishes to receive the guest. If the resident does not answer the phone, the visitor must leave the property." *Id*. Because Ms. Arthur is deaf, she cannot hear the phone ring when she has a visitor. *Id*. ¶ 18. Some time before January 2017, DCHA modified its "phone call policy" for Ms. Arthur. *Id*. This modification allowed Ms. Arthur's son Robert to visit her without calling ahead of time, and it also allowed him to receive calls from and give permission to guests who visited Ms. Arthur. *Id*.

On January 18, 2017, CIH rescinded its prior modification of the "phone call policy" for Ms. Arthur. *Id*. ¶ 21. Despite "numerous requests," CIH refused to revert to its prior practice and applied its standard "phone call policy" to Ms. Arthur. *Id*. ¶ 21. In May and June 2017, Mr. Arthur attempted to visit his mother, and he was not allowed in her apartment because his mother did not answer the video relay system. *Id*. ¶ 22. On June 17, 2017, Mr. Arthur entered his mother's apartment anyway, and the security officer called CIH and the DCHA police to issue a "Bar Notice" under 14 DCMR § 9600 to prevent Mr. Arthur from entering the premises in the near future. *Id*. ¶¶ 27–30. On June 26, Claridge Towers sent Ms. Arthur a letter informing her of the Bar Notice issued for her son. *Id*. ¶ 40. The letter stated that the Bar Notice would expire on August 17, 2017 and that Ms. Arthur could face eviction and landlord-tenant court proceedings if she permitted her son to access the premises. *Id*.

On August 10, 2017, Mr. Arthur confirmed with the DCHA police that the last day of his Bar Notice was August 17 and that he could reenter the premises on August 18. *Id*. ¶ 48. He

called the DCHA police again on August 18, and the officer on duty "confirmed that there was no Bar Notice in effect for [Mr. Arthur] at Claridge Towers." *Id.* ¶ 49. However, later that day when he arrived at Claridge Towers, the security officer "stated that a second Bar Notice had been issued against Mr. Arthur on July 11, 2017," preventing him from entering the premises for six months. *Id.* ¶¶ 50–52. Neither Mr. Arthur nor his mother had been informed of this second Bar Notice. *Id.* ¶ 53.

Other visitors also were denied entry to Ms. Arthur's apartment. On August 22, 2017, the security officer refused to allow a service technician into Ms. Arthur's apartment to fix her video relay system. *Id.* ¶ 56. Though she "had notified Claridge Towers' staff in advance and in writing that her Video Relay System was not working and had notified them, as provided by 14 DCMR § 9600.3, of the date and time the service technician would arrive," the technician was turned away when Ms. Arthur did not answer the video relay system he was there to fix. *Id.* Friends of Ms. Arthur's also were turned away in September and November 2017 when she failed to answer the video relay system. *Id.* ¶ 58. The plaintiffs now ask the Court to reconsider their common law implied warranty of habitability and covenant of quiet enjoyment claims.

## II.     LEGAL STANDARD

Rule 54(b) of the Federal Rules of Civil Procedure "allows a litigant to move for reconsideration or modification of a district court's interlocutory order disposing of 'fewer than all the claims or the rights and liabilities of fewer than all the parties' 'at any time' before the court's entry of final judgment." *Cobell v. Jewell*, 802 F.3d 12, 19 (D.C. Cir. 2015) (quoting Fed. R. Civ. P. 54(b)). A district court may reconsider an interlocutory order "as justice requires." *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011) (internal quotation marks omitted). Applying this standard, courts will reconsider a prior

3

opinion when they have "patently misunderstood a party, [when they have] made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court." *Scahill v. D.C.*, 286 F. Supp. 3d 12, 17–18 (D.D.C. 2017) (alterations adopted and internal quotation marks omitted). "The burden is on the moving party to show that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." *United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 893 F. Supp. 2d 258, 268 (D.D.C. 2012).

### III.   ANALYSIS

#### A.   Implied Warranty of Habitability

The plaintiffs argue that the Court erred by rejecting Ms. Arthur's implied warranty of habitability claim because, contrary to this Court's prior opinion, she did allege that the defendants violated provisions of the D.C. housing code. *See* Pl.'s Mot. at 3–4. This argument fails for the following reasons.

Claim 12 of the complaint, which describes the implied warranty of habitability claim, contains no citation to a housing code provision, nor does it set forth any facts alleging the defendants violated a specific provision of the D.C. housing code. *See* Compl. ¶¶ 159–60. But looking past Claim 12, the complaint alleges just one conceivable violation of a housing code regulation: that the defendants failed to properly serve bar notices on Ms. Arthur and her son in violation of 14 DCMR § 9600.7(a)–(c). *See id*. ¶ 53. While at other times the complaint *references* other provisions of the housing code, it fails to actually *allege* that the defendants have violated these other provisions. For instance, the plaintiffs' citations to 14 DCMR §§ 9600.2, 9600.3, 9600.5(a)–(c), and 9600.11 in paragraphs 28–30 of the complaint simply describe DCHA's barring policy, without any specific allegations that the defendants violated

4

these provisions.² *See* Compl. ¶¶ 28–30.  And while the plaintiffs cite to 14 DCMR § 9600.3 in paragraph 56, that paragraph asserts that Ms. Arthur *complied* with the housing code provision, not that the defendants violated it.  *See* Compl. ¶ 56.

Taking as true the plaintiffs' allegation that the defendants violated § 9600.7(a) by failing to serve a bar notice upon them, such a violation would still not establish a breach of the implied warranty of habitability.  The implied warranty of habitability imposes upon the landlord an "obligation to the tenant to *maintain the premises* in accordance with all applicable law." *Beltway Mgmt. Co. v. Lexington-Landmark Ins. Co.*, 746 F. Supp. 1145, 1149 (D.D.C. 1990) (emphasis added).  Failing to serve a bar notice does not implicate the landlord's obligation to "maintain the premises."  Further, "one or two minor violations standing alone which do not affect habitability are de minimis" and do not violate the implied warranty.  *Javins v. First Nat. Realty Corp.*, 428 F.2d 1071, 1083 n.63 (D.C. Cir. 1970).  The defendants' failure to properly serve the bar notices does not affect the habitability of Arthur's dwelling.  And "more than de minimis violations of the Housing Regulations are required to establish breach of the implied warranty."  *Demisse v. Aldon Mgmt. Corp.*, No. 18-cv-2270, 2020 WL 1244931, at *7 (D.D.C. Mar. 16, 2020) (internal quotation marks omitted).  Accordingly, the Court will deny the plaintiffs' motion to reconsider its prior ruling on the implied warranty of habitability claim.

---

² The provisions cited in these paragraphs primarily describe how DCHA's "Barring Policy" applies to its *residents*.  For instance, 14 DCMR § 9600.2 states that "[n]o person may enter upon a DCHA property unless that person is authorized to be on the property"; § 9600.5(a) states that "[a]ny resident's guest who engages in any activity that threatens the health, safety or right to peaceful enjoyment of the premises by other residents or DCHA employees or violates DCHA policy is an unauthorized person and may be barred for a Temporary or extended period of time"; and § 9600.5(b)(1) states that a person who enters DCHA property "without presenting identification or properly signing the visitor log" may be barred, "unless identified as a guest by the resident they are visiting."  These provisions govern the behavior of DCHA residents and their guests, not DCHA, so it is unclear how the plaintiffs could even allege that the defendants violated these regulations.

### B.     Covenant of Quiet Enjoyment

The plaintiffs also argue that the Court should reconsider Ms. Arthur's claim for a breach of the covenant of quiet enjoyment because it mistakenly stated that a breach of the covenant of quiet enjoyment requires interference with the tenant's possession of her property. *See* Pl.'s Mot. at 5. The plaintiffs claim that, because the defendants prevented Ms. Arthur's son, her guests, and a service technician from visiting her apartment, they interfered with a "permissible use" of her property and thus violated the covenant of quiet enjoyment. *See* Pl.'s Reply at 6, Dkt. 68.

The plaintiffs misconstrue the state of the law. The proposition that "[t]he landlord's covenant for quiet enjoyment . . . goes only to . . . possession" remains valid. *Weisman v. Middleton*, 390 A.2d 996, 1001 (D.C. 1978) (internal quotation marks omitted); *see also Demisse*, 2020 WL 1244931, at *6 ("The covenant is not broken unless there is an eviction from, or some actual disturbance in, the possession by the landlord, or by a third person under paramount title.") (internal quotation marks omitted). Arthur makes no allegation that the defendants—by preventing her son, guests and technicians from entering her apartment—interfered with her possessory interest.

The cases relied on by the plaintiffs do not implicate the covenant of quiet enjoyment. In *Sobelsohn v. Am. Rental Mgmt. Co.*, 926 A.2d 713 (D.C. 2007), the court noted that the *only* implied obligation at common law was the covenant of quiet enjoyment, and that *Javins* set forth an *additional* implied obligation: the implied warranty of habitability. *Id*. at 715. *Sobelsohn*'s statement that *Javins* changed the "traditional approach" simply refers to *Javins'* discussion of property law evolving from the older view that a lease was "essentially a property transaction, a conveyance of an interest in land." *Id*.

6

A breach of the covenant of quiet enjoyment requires a disturbance in physical possession.  *See Whole Foods Mkt. Grp., Inc. v. Wical Ltd. P'ship*, 288 F. Supp. 3d 176, 191 (D.D.C. 2018).  The plaintiffs have not met this "high bar."  *Id*.  Because the plaintiffs have not established that the defendants interfered with Ms. Arthur's possession of her apartment, the Court will deny the plaintiffs' motion to reconsider on the covenant of quiet enjoyment claims.

Accordingly, it is

**ORDERED** that the plaintiffs' Motion to Reconsider Dismissal of Claim 12, Dkt. 59, is **DENIED**.

July 8, 2020

_____
DABNEY L. FRIEDRICH
United States District Judge